[No. 12396.   Department Two.   October 28, 1915.]

THE CITY OF SEATTLE, *Appellant*, v. GEORGE W. WALKER et al., *Respondents*.[1]

LIMITATION OF ACTIONS—IMPLIED LIABILITY—NOT ARISING FROM WRITTEN CONTRACT. An action by a city to recover an unlawful over-payment of interest on improvement bonds, is one arising out of an implied liability to repay the same; and not being based upon the violation of the terms of any written contract, it must be commenced within the three years prescribed by Rem. & Bal. Code, § 159, subd. 3, for actions upon a contract or liability express or implied which is not in writing and does not arise out of any written contract.

SAME—IMPLIED LIABILITY—ACCRUAL OF ACTION. The right of action by a city to recover from a contractor the accumulated interest on improvement bonds, delivered to him at face value, accrues when the bonds were delivered and monthly credits given to which the contractor had no just claim; and it is immaterial that the city might have deducted the same from funds withheld until final settlement.

Appeal from an order of the superior court for King county, Smith, J., entered August 13, 1914, upon sustaining a demurrer to the complaint, dismissing an action to recover an illegal payment of interest on local improvement bonds.   Affirmed.

*James E. Bradford* and *Howard A. Hanson*, for appellant.

*Turner & Hartge*, for respondent.

MORRIS, C. J.—The city of Seattle brought this action on November 19, 1913, to recover interest which it had illegally

[1]Reported in 152 Pac. 330.

paid to the respondent Walker on certain local improvement district bonds issued by the city. The contracts for payment of which the bonds were delivered and the provisions of the bonds were generally the same as those under consideration in the case of *State ex rel. Grant Smith & Co. v. Seattle*, 74 Wash. 438, 133 Pac. 1005. The bonds bore coupons carrying interest from their date until maturity, but were not delivered to the contractor until the monthly payments and final settlement on the contract became due, the final delivery not being made until over a year from the date of the bonds. As a result of this delivery long after their issuance, interest had accrued on the bonds when the respondent became entitled to receive them at their face value. We held in the *Grant Smith* case, *supra*, that payment of any interest for the period between the date of the bonds and their delivery to the contractor was illegal. In this action the city sought to recover the interest thus illegally paid to the respondent. The respondent demurred to the complaint on the ground, among others, that the action was barred by the statute of limitations, and, the demurrer having been sustained by the trial court upon that ground, the city appeals.

The appeal involves the consideration of two questions: First, what statute controls; second, when does the statute begin to run.

I.   The statutes, one of which is applicable to this case, are: The three-year statute, Rem. & Bal. Code, § 159, subd. 3 (P. C. 81 § 65):

"An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument;"

The six-year statute, Rem. & Bal. Code, § 157, subd. 2 (P. C. 81 § 55):

"An action upon a contract in writing, or liability express or implied arising out of a written agreement;" and

The two-year statute, Rem. & Bal. Code, § 165 (P. C. 81 § 75):

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

In view of our decision in the *Grant Smith* case, it will not be questioned that this payment was a payment made in violation of law, which may be recovered by the city in a proper action. The city has made an unlawful overpayment. The respondent has received an unmerited enrichment the retention of which is unjust, and in equity and good conscience he should repay the city. The law in such cases implies a liability to refund the illegal payment, and, if not refunded, an action will lie to recover the amount unjustly retained. Keener, Quasi-Contracts, p. 40. The action, therefore, arises out of an implied liability, and the two-year statute may be eliminated. While this payment was incidental to a lawful payment made pursuant to the terms of a written instrument, the payment itself was illegal and was not contemplated by the terms of that instrument. The payment being in violation of the terms of the written contract, it cannot be said to have been made on a written contract or agreement, and not being so made, the implied liability to repay does not arise out of a written instrument, and it follows that the six-year statute cannot apply. This leaves as the controlling statute the three-year limitation, the action being clearly one arising upon an implied liability, not arising out of a written instrument.

II.  The second question presented is, When did the cause of action accrue and the statute begin to run? Three possible answers to this query are discussed in the briefs: First, that the date of delivery of the bonds fixes the time; second, that each interest coupon gives a separate cause of action which does not arise until the coupon is redeemed and the excess interest paid; third, that the cause of action accrues

and the statute starts running upon the final settlement between the city and the contractor.

The city contends for the application of the latter rule. We conclude, however, that the cause of action accrued when the bonds were delivered to the contractor. With each delivery of bonds and coupons, when the monthly payments and final settlement were made, the respondent received a credit to which he had no just claim. His duty to refund this excess payment arose at once, and a demand by the city for a repayment could have been enforced at that time. The authorities are uniform in holding that the statute runs from the date of the receipt of the benefit, which in this case was the delivery of the bonds. Buswell, Limitations and Adverse Possession, § 171; Wood, Limitations (3d ed.), § 152; Woodward, Quasi Contracts, § 33.

. The city argues that the statute does not begin to run until the final settlement between the city and the contractor, when the city could have withheld from the thirty per cent it had retained to insure proper completion of the contract the amount of the excess payment of interest. While we do not pass upon the right of the city to withhold this excess interest at that time, it would not follow, granting that the right exists, that the statute did not begin to run until that time. The right to a repayment arose when the overpayment was made. The fact that the city had money in its hands, from which the illegal payment could have been deducted and the city reimbursed, would not defer the right of the city to a recovery until the last opportunity to offset the overpayment had passed.

The last delivery of bonds was made more than three years prior to November 19, 1913, when this action was commenced. The action not being commenced within the time limited by law, the order of the trial court in sustaining the demurrer is affirmed.

FULLERTON, MAIN, and ELLIS, JJ., concur.