[No. 13129. Department One. July 11, 1916.]

ERIK O. LINDBLOM, *Respondent*, v. E. W. JOHNSTON, *Appellant*.[1]

LIMITATION OF ACTIONS—ARISING FROM WRITTEN CONTRACT—IMPLIED LIABILITY—CONTRIBUTION. An action to enforce contribution from a cosurety upon a bond falls within Rem. & Bal. Code, § 157, subd. 2, providing that an action upon a . . . contract express or implied arising out of a written agreement, may be commenced at any time within six years after the cause of action accrued.

PRINCIPAL AND SURETY—CONTRIBUTION—ACTIONS—LACHES. An action for contribution from a cosurety on a bond is not barred by laches from the mere fact of delay short of the period of the statute of limitations, where there was no intervening change in the condition or relation of the parties to the prejudice of the party to be charged.

SAME—LIABILITY OF COSURETY—CONTRIBUTION — DEFENSES. The liability of a surety on a bond to contribute one-third of the amount paid by two of his cosureties in satisfaction of a judgment entered against all of them is not affected by the fact that by delay the right of action was lost against other cosureties liable whose duty it was to contribute, where he neither paid nor offered to pay his proportion but repudiated the liability.

SAME. It is not a defense to an action for contribution from a cosurety on a bond that the surety making payment of the judgment did so with the check of a corporation which he reimbursed, as the same was merely advanced as a temporary loan by a party not liable.

SAME—LIABILITY OF COSURETY—PAYMENT—ASSIGNMENTS. Contribution by one cosurety of one-half of the amount of the judgment paid by another cosurety is not a voluntary payment, and he could assign his right to contribution from other cosureties for the purposes of a suit for contribution.

TRIAL—ADVISORY VERDICT. In an equitable action for contribution from cosureties, the verdict of a jury is advisory, and it is not error to direct judgment in disregard of the verdict.

NEW TRIAL—GROUNDS—ABSENCE OF WITNESS—DILIGENCE. It is not error to deny a new trial asked on the ground of the absence of a material witness, where the action had been pending for four years, the last continuance was had upon appellant's request, the witness at all times resided out of the jurisdiction of the court, due diligence required the taking of his deposition, and his testimony would have been contradicted.

[1]Reported in 158 Pac. 972.

Appeal from a judgment of the superior court for King county, Smith, J., entered March 6, 1915, in favor of the plaintiff, upon withdrawing the case from the consideration of the jury, in an action for contribution. Affirmed.

*John B. Hart* and *Frederick C. Kapp*, for appellant.

*John W. Roberts* and *Ira D. Orton*, for respondent.

FULLERTON, J.—The facts giving rise to the present cause of action, briefly stated, are the following: Some time prior to July 16, 1900, one Joseph H. Wright was appointed post-master of the post office at Nome, Alaska. On the day named, he qualified as such by giving bond to the United States in the penal sum of $20,000, conditioned for the faithful performance of his duties. His sureties on the bond were Erik O. Lindblom, Jafet Lindeberg, E. W. Johnston, Bernard Niebling, Alex Allardyce, W. H. Ferguson, Frank J. Lackie, Virgil Moore, and Alonzo Rawson. Subsequently Wright defaulted in his accounts, and on July 9, 1904, the United States brought suit in one of the district courts of Alaska to recover upon the bond. No service of process was had on the principal, Wright, or on the sureties Allardyce, Lackie or Rawson. Service of process was, however, duly made on the other sureties named, and on September 15, 1905, judgment was rendered against them for the amount of the defalcation. An execution was issued on this judgment against the judgment debtors, and while the writ was in the hands of the officer holding it in execution, Lindeberg, on August 27, 1906, caused the amount of the judgment to be paid to such officer by the check of the Pioneer Mining Company, a corporation of which he was then president. The sum paid was $10,667.30. Later on Lindeberg reimbursed the mining company for the amount advanced, and shortly thereafter Lindblom, another of the cosureties, paid to him one-half thereof.

Subsequently Lindblom took an assignment from Lindeberg of his right to enforce contribution from the other co-

sureties, and on June 8, 1911, brought the present action in the superior court of King county, in this state, to recover from Johnston one-third of the amount paid in satisfaction of the judgment, with interest. In his complaint, Lindblom alleged the facts substantially as we have recited them, alleging, however, that payment of the judgment was made by himself and Lindeberg jointly, making no mention of the intervention of the Pioneer Mining Company; alleging further, the insolvency of the cosureties Moore, Ferguson, Allardyce, Niebling and Lackie, and the death of Rawson without estate.

A demurrer was interposed to the complaint by Johnston, which the trial court overruled. An answer was then filed, putting in issue certain of the allegations of the complaint. A trial was entered upon by the court sitting with a jury, wherein, at the close of all of the evidence, the court took the case from the jury and directed a judgment for the plaintiff, Lindblom. Johnston appeals.

It is first assigned that the court erred in overruling the demurrer to the complaint. From the dates before given, it will be observed that some five years elapsed between the time the judgment of the Alaska court was paid and the time of the commencement of the present action, and it is contended that the action is barred, both by the statute and by the doctrine of laches. In support of the first contention, it is maintained that the liability of a cosurety for contribution is not contractual, and does not arise upon a written agreement, but is based on an implied promise which the law raises from principles of natural justice and equity, and hence an action to enforce contribution is barred by that section of our statute (Rem. & Bal. Code, § 159) which limits to three years an action upon a contract, express or implied, which is not in writing and does not arise out of any written instrument. Many cases are cited from other jurisdictions which support the principle, and were this section alone to be considered, undoubtedly the rule contended for should be

allowed to prevail. But our code contains a provision not found in the statutes of states from which the precedents are chosen, which we have heretofore held changes the general rule. Subdivision 2 of § 157 of the code provides that an action upon a contract in writing, or a contract express or implied arising out of a written agreement, may be commenced at any time within six years after the cause of action accrued, and in *Caldwell v. Hurley*, 41 Wash. 296, 83 Pac. 318, we held that the section governed actions between cosureties for contribution. In the course of the opinion we said:

"Said subdivision 2 of § 4798, Bal. Code, differs from the statutes of limitation of most, if not all, the other states. In fact, after a painstaking research, we have found no similar statute. The peculiar feature of our statute is that an *implied liability* arising out of a written instrument is included in the same clause with an *express liability* arising out of a written contract. The legislature evidently thereby intended that a certain class of actions should be included within the terms of said section which had not in other states been associated or connected with actions on written instruments or actions founded upon written agreements. The liability for contribution of appellant and respondent is an implied liability which arose by reason of their becoming cosureties on the note. If they had not entered into the written contract which resulted from their signing their names on the back of the note, at the time, under the circumstances, and for the purpose, found by the court, there would be no liability. This liability now exists, is contractual in its nature, and is the direct result of that written agreement by which respondent was compelled to make the payment for which he now seeks contribution. The allegations of the amended complaint, and the facts found by the court, show a cause of action in favor of respondent on account of an implied liability arising out of a written agreement. To place any other construction on our statute would be to hold that the words contained in the last clause of said subdivision 2 were placed there without purpose or meaning."

The case of *Seattle v. Walker*, 87 Wash. 609, 152 Pac. 330, while not presenting the same state of facts, supports

the rule in principle. The question there considered was the
right of the city to recover an overpayment made to a con-
tractor on a public work. One of the contentions was that
the liability to refund the overpayment was an implied lia-
bility arising out of a written agreement, and hence within
the six-year statute cited. The contention was disallowed,
not on the principle that all implied liabilities were relegated
to the three-year statute, but on the ground that the over-
payment was made in violation of the terms of the written
contract, and thus could not be said to arise out of a written
agreement. But if it be said that the questions decided in
this case may be distinguished from the questions presented
in the case at bar, we are clear that the earlier one cannot be
so distinguished, and to sustain the appellant's contention
would require its overruling. This we are not inclined to do.
We think it a correct interpretation of the statute.

The case of *Spokane County v. Prescott*, 19 Wash. 418, 53
Pac. 661, 67 Am. St. 733, relied upon by the appellant, is
not contrary to the principle here announced. That was an
action by the county to recover against the sureties on a
treasurer's bond for a defalcation of the treasurer after the
statute had barred an action against him individually for
the liability. It was sought to hold the sureties on the theo-
ry that their promise to answer for the defalcation was in
writing and that liability thereon existed for six years, which
time had not then expired. The judgment was rested on the
ground that there could be no recovery against the sureties
unless liability existed against the principal at the time of
the commencement of the action; this on the principle that
their undertaking was collateral to his, and their liability
ceased when his ceased. In the course of the opinion it was
said that the right of action against the treasurer was not
controlled by the bond, but existed independent of it, and
hence the statute of limitations governing the right of action
in such a case was in no way affected by the bond. But
plainly this is not the question now before us. Here a re-

covery has been had against the defaulting officer, and no question exists as to his liability. Certain of the sureties have made the default good and now seek contribution from a cosurety. The obligation to make the defalcation good arises out of the bond, and manifestly it is not contrary to the rule of the cited case to say that a right of action is affected by a different section of the statute of limitations.

Nor is the contention that the action is barred by laches tenable. Laches is a doctrine of equity. It does not arise from mere lapse of time alone, but arises upon lapse of time together with some intervening change in the condition or relation of the parties adversely affecting the rights of the party sought to be charged. To constitute laches not only must there have been delay in the assertion of the claim, but some change of condition must have occurred which would make it inequitable to enforce the claim. No such condition appears on the face of the complaint before us. It shows a delay merely; nothing to indicate that the appellant has been injured in any way by the delay. Since, therefore, the delay was short of the period of the statute of limitations, it does not constitute a bar.

Another contention made in this connection may be noticed here. It is said that the evidence discloses that the principal, Wright, and certain of the sureties on the bond not here affected could have been forced to contribute to the satisfaction of the judgment had action been instituted against them within a reasonable time after the payment of the judgment, and that these rights are now lost. But we think the evidence sufficiently establishes that these persons have been insolvent at all times since the judgment and that suit against them would have been useless. But we cannot think the plea would avail the appellant in any event. He was one of the persons against whom the judgment was rendered. His liability to pay was coequal with that of any other surety, and the duty to see that all contributed was as much his duty as it was the duty of any other surety. But

he neither paid, nor offered to pay, his just proportion of the judgment. On the contrary, he repudiated the obligation, and compelled those who did pay it to resort to the courts to enforce the duty against him. Clearly, in equity, he is in no position to complain of their neglect.

The next contention is that there is a variance amounting to a failure of proof between the allegation of the complaint and the evidence by which the allegations were sought to be established. This contention is founded on the fact that the allegation of the complaint is that the judgment was paid by the respondent and Lindeberg, while the evidence shows that it was paid by the Pioneer Mining Company, whom the respondent afterwards reimbursed, and who was subsequently reimbursed to the extent of one-half of the amount by Lindeberg. But we can hardly think this contention tenable. The Pioneer Mining Company was not obligated on the judgment, and its advancement of the money was made at the respondent's request and was nothing more than a temporary loan. It was clearly a payment by the respondent, and he stated the facts sufficiently when he alleged a payment by himself merely, without setting forth the details as to the manner of the payment. Nor was the payment of one-half of the liability by Lindeberg to the respondent voluntary in the sense that he could not enforce contribution from the other sureties for the excess of his proportionate share. No payment by a surety of an obligation which can be coerced against him is voluntary in this sense. As between the respondent and Lindeberg, the latter was obligated to contribute up to one-half the sum the respondent was compelled to pay. His right to a contribution from the other sureties then arose, and he could assign this claim to respondent for the purposes of suit. The right to contribution being equitable, a court of equity may seize upon the entire case and compel all of the obligors to do equity.

It is next contended that the court erred in taking the case from the jury and rendering judgment on the facts in

favor of the respondent. But since the action is one of equitable cognizance, the verdict of the jury would at best have been only advisory, and subject to avoidance in case the court did not agree with their findings. Having the power to disregard the verdict, the court could, without committing error, discharge the jury at any stage of the proceedings and itself render such judgment as it deemed the facts warranted.

Some question is made as to the sufficiency of the evidence to justify a recovery. A reading of the record, however, convinces us of the justness of the respondent's claim. The obligation he was forced to pay was one on which the appellant was equally liable. The proofs abundantly show that all the other cosureties, as well as the principal, are now, and at all times since the judgment was paid have been, insolvent. In justice and equity the respondent should contribute to the paying sureties his proportionate share of the liability.

Error is assigned on the admission of certain testimony and the refusal of the court to compel the production of the books of the Pioneer Mining Company. These questions we shall not discuss in detail. Our examination of the record convinces us that they are not of sufficient merit to require a reversal.

Error is also assigned on the refusal of the court to grant the appellant's motion for a new trial. This motion was based upon affidavits tending to show that ex-postmaster Wright was a material witness on behalf of the appellant and had promised to be present and testify at the trial. They further show that, shortly before the cause was set for trial, Wright left his usual place of abode in San Francisco, California, and went to a remote mining district in Oregon, where he remained until after the trial had been concluded; that he did not know the case had been set for trial, and that the appellant was unable to communicate the fact to him, and that for this cause alone he was not present. Wright's af-

fidavit is filed in support of the motion and states facts material to the issues between the parties. But we think, nevertheless, that the court did not err in denying the motion. The action had been pending for more than four years, and the last continuance was had at the appellant's request under an express stipulation that no further continuances would be asked. Wright, moreover, resides and, in so far as the record discloses, has at all times resided, without the jurisdiction of the court, so that there was no means of compelling his attendance by process. Seemingly, therefore, it was not the exercise of due diligence to fail to take his deposition. Again, Wright, in detailing the circumstances connected with the transaction, names a number of persons as having to do therewith. In response to the motion, the respondent produced the affidavits of these persons, each of whom contradict Wright concerning the matter recited, showing that his recollection or knowledge of the particular transaction was either faulty or that his averments were untrue. Were Wright's testimony in the record in the form that it appears in his affidavit, we cannot, in the light of the contradictory evidence, think that a different result should have been reached.

The judgment is affirmed.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.