[No. 15732. Department Two. June 7, 1920.]

## PIONEER MINING & DITCH COMPANY, *Appellant*, v. J. M. DAVIDSON, *Respondent*.[1]

GUARANTY (20)—PRINCIPAL AND SURETY (63)—RIGHT TO CONTRIBUTION. The right of contribution arises in favor of a joint guarantor who pays the common debt, although he took an assignment of it and the obligation of the principal debtor was not cancelled or satisfied.

ASSIGNMENTS (13)—IN WRITING—REQUISITES—NAMING DEBTOR—STATUTES. Rem. Code, § 191, providing that any assignee of a specialty or other chose in action for the payment of money, by assignment in writing, may maintain an action thereon in his own name, against the obligors or debtors therein named, does not require that the assignment name the obligor or debtor to be sued; the reference being to debtors named in the obligation assigned.

SAME (20)—INTEREST TRANSFERRED—CHOSE IN ACTION. A chose in action passes by a general assignment by one mining company to another of all its personal property, and includes a right of contribution by a joint guarantor's payment of a common debt.

LIMITATION OF ACTIONS (16) — WRITTEN AGREEMENTS — IMPLIED LIABILITY... An action by a joint guarantor who paid the common debt to enforce contribution against co-guarantors is upon an implied liability arising out of a written contract, within Rem. Code, § 157, and can be maintained at any time within six years after the cause accrued.

[1]Reported in 190 Pac. 242.

ASSIGNMENT (2)—THINGS ASSIGNABLE—RIGHT OF CONTRIBUTION. A right of action for contribution in favor of one guarantor against another is assignable.

SAME (5)—THINGS ASSIGNABLE—PERSONAL NATURE—RIGHT TO CONTRIBUTION. The right to contribution being based upon the principle that equality is equity, is not defeated on the theory that the guaranty was personal and could not be so assigned as to confer upon an assignee the right to contribution.

GUARANTY (20)—PRINCIPAL AND SURETY (63)—RIGHT TO CONTRIBUTION—ASSUMPTION OF DEBT BY THIRD PERSON. Where a joint guarantor contracted with a third person to satisfy the obligation, such person, in paying the proportion of the co-guarantors, was not paying its own debt or the debt of its privy, and it was therefore entitled to exact contribution from the other obligors whose debt was paid.

APPEAL (388)—REVIEW—QUESTIONS RAISED BY RESPONDENT. On appeal by plaintiff from a judgment of dismissal on challenge to the sufficiency of the evidence, error assigned by defendant in overruling a demurrer to the answer cannot be reviewed.

HOLCOMB, C. J., dissents

Appeal from a judgment of the superior court for King county, Frater, J., entered September 5, 1919, upon granting a nonsuit, dismissing an action for contribution. Reversed.

*Edward H. Chavelle* and *Williamson, Williamson & Freeman,* for appellant.

*Edward Judd* and *O. L. Willett* (*M. M. Lyter,* of counsel), for respondent.

FULLERTON, J.—In years 1902 and 1903, the respondent, Davidson, acquired an interest in certain mineral locations and water rights in the Kugarok mining district of Alaska. In the following year he interested one W. H. Metson and one J. E. Chilberg therein, and the three organized a corporation, called the Kugarok Mining and Ditch Company, for the purpose of developing and working the properties. In the year 1905, the company spent large sums of money in the prosecution of development work, and, needing additional

funds, sought to borrow from the Scandinavian American Bank of Seattle. The bank, as a condition to its advancing the money, required a guaranty from the promoters of the mining company for its repayment. In compliance with the requirement, the respondent, together with Metson and Chilberg, executed and delivered to the bank the following instrument:

"To Scandinavian American Bank, Seattle, Wash.:

"I request you to give credit to the Kugarok Mining and Ditch Company, successors or survivors, for a sum of money not exceeding the amount of ($50,000) fifty thousand and 00/100 dollars, and as said Kugarok Mining and Ditch Company contemplates a course of dealing with you, I request you to continue the said credit and renew the same from time to time for the said or any other amount. And I hereby promise to pay to you on demand in United States gold coin, all moneys which shall at any time, whenever said demand is made, be due from said Kugarok Mining and Ditch Company, successors or survivors, on whatever account, but not exceeding said amount of ($50,000) fifty thousand dollars and accrued interest, in whatever form said indebtedness may be, and whether said Kugarok Mining and Ditch Company be party thereto either alone or in partnership, or in common, or jointly, with any others. These presents shall constitute a continuing guaranty, and shall not be considered satisfied by and payment by or for account of said Kugarok Mining and Ditch Company. You may, without affecting this guaranty, grant time or other indulgence to or compound with said Kugarok Mining and Ditch Company, successors or survivors, or release or surrender any collateral security or obligation held by you against any ultimate balance which shall remain due to you from said Kugarok Mining and Ditch Company, successors or survivors, within the limit aforesaid, and accrued interest, notwithstanding whatever intermediate credits, loans, advances or transactions. And this guaranty shall continue after my death until you shall have received notice of revocation from my

personal representatives, which revocation shall then apply only to advances made after receipt of such notice.    And this guaranty shall not be discharged by your omission to take action upon the principal debt or any collateral that you may hold for its payment, and no notice need be given to me of any default on the part of said Kugarok Mining & Ditch Company, successors or survivors.

"Dated San Francisco, Nov. 20th, 1905.

"J. E. Chilberg,
"W. H. Metson,
"J. M. Davidson."

The respondent, Davidson, held the offices of president and manager of the corporation, and had the active management of its affairs.    From time to time following the execution of the guaranty, the corporation borrowed from the bank various sums of money, giving its notes therefor.    On January 29, 1912, these loans aggregated seventy-five thousand five hundred dollars, and on that date a renewal note, payable on demand, was given the bank for that sum.

On May 31, 1910, Metson, by an instrument in writing, sold, assigned and turned over to a corporation known as the Pioneer Mining Company all of his interests in the Kugarok Mining and Ditch Company, together with other property.    In consideration of the assignment, the Pioneer Mining Company agreed to issue and deliver to Metson, of its capital stock then in its treasury, three hundred and seventy-six thousand shares, and assume and pay all

"outstanding obligations or claims, guarantees or indemnifications which the said party of the first part shall or would have to pay for or on account of the said Kugarok Mining and Ditch Company, . . ."

On January 13, 1913, the Pioneer Mining Company, on demand of the Scandinavian American Bank, paid

to the latter the amount of the note it held against the Kugarok Mining and Ditch Company; the bank, however, did not stamp the note as paid, but indorsed it without recourse and delivered it over to the Pioneer Mining Company. Later on, the Pioneer Mining Company transferred all of its property to the plaintiff and appellant in this action, the Pioneer Mining and Ditch Company. This conveyance was also in writing, and, after the describing of various specified properties, concluded with the following general description:

"Together with all other personal property now owned or possessed by the Pioneer Mining Company in the district of Alaska, the intent being to convey to the party of the second part all personal properties of the party of the first part owned by said party of the first part in the district of Alaska or elsewhere."

The present action was instituted on November 20, 1918, by the appellant to recover from Davidson upon the guaranty before quoted. In its complaint it set forth the facts substantially as we have outlined them, and alleged, in addition thereto, that the Kugarok Mining and Ditch Company was, at the time of the transfer of the note, wholly insolvent; that it has been at all times since, and is now, wholly insolvent, and that it had been unable to collect from it any part thereof. Judgment was demanded for one-third of the amount paid to the Scandinavian American Bank by the plaintiff's predecessor in interest at the time the note was transferred to it.

Issue was taken upon the complaint and a trial entered upon by the court sitting with a jury. At the conclusion of the plaintiff's case, the defendant challenged the sufficiency of the evidence to sustain a judgment against him, which challenge the trial court sustained, and afterwards entered a judgment of dismissal

with costs. From this judgment, the present appeal is prosecuted.

Since the record is silent as to the reasons which actuated the trial judge in sustaining the challenge to the sufficiency of the evidence, the questions suggested can best be noticed by noticing the reasons urged by the respondent's learned counsel as supporting his ruling. The first of these is that the record fails to show a payment by the appellant's assignor of the obligation due from the Kugarok Mining & Ditch Company to the Scandinavian American Bank. The record on this matter is, it will be remembered, that the assignor of the appellant, in consideration of a transfer of certain property to it by Metson, assumed the liability of Metson as guarantor of the note, and that afterwards, on demand of the bank, paid the amount of the note to the bank and took an assignment of the note. The respondent calls attention to the general rule that the right of contribution between sureties arises only after the payment of the common obligation, or after something is done in relation thereto by the surety claiming contribution equivalent to a payment; and argues that, since the obligation still exists against the Kugarok Mining Company, there was here no payment. But this argument mistakes the rule. It is not necessary that the obligation of the principal debtor be canceled or satisfied, as against the principal debtor, to give rise to the right of contribution. The obligation arises when payment is made to the creditor to whom the guaranty runs. Here there was such a payment. The bank, the guaranteed creditor, no longer has any claim either against the guarantors or the Kugarok Mining & Ditch Company, the principal debtor. As to these parties the debt is paid and the guaranty satisfied. The fact that the guarantor who

paid the debt took an assignment of it from the creditor does not alter the situation. This in no manner affected the liability of the debtor. Had there been no note, or had there been no assignment of the note that actually existed, its obligation would have been the same as it now is. In such a case it would still have owed the debt, and would have owed it, as it now does, to the guarantor who paid the bank, instead of owing it to the bank itself. In other words, the situation is no different than is the situation which always arises where a guarantor pays the obligation of his principal. The fact, therefore, that the guarantor took an assignment of the note instead of having it canceled, in no way affects the liability of the other guarantors to contribute.

The second reason urged is that the appellant, the present plaintiff, has no capacity, as assignee of the Pioneer Mining Company, to sue upon the obligation. This contention is founded upon § 191 of the Code (Rem.) which, omitting the proviso, reads:

"Any assignee or assignees of any judgment bond, specialty, book account, or other chose in action, for the payment of money, by assignment in writing, signed by the person authorized to make the same, may, by virtue of such assignment, sue and maintain an action or actions in his or her name, against the obligor or obligors, debtor or debtors, therein named, notwithstanding the assignor may have an interest in the thing assigned."

Arguing in support of the contention, counsel say that this statute "clearly and specifically requires that the obligor or debtor to be sued must be named in the assignment" before an action on an assigned obligation can be maintained by the assignee thereof. But we cannot think this the true meaning of the statute. In the first place, the purpose of the section of the

statute is not to confer a right of action in the assignee of a chose in action where the assignment is absolute— this is done elsewhere in the statute—but was intended to confer such right of action in those instances where the assignor retains "an interest in the thing assigned;" instances inapplicable to the situation before us. In the second place, we cannot think the interpretation which the contention puts upon the statute the correct interpretation, even conceding the statute applicable. The phrase "obligor or obligors, debtor or debtors therein named," seems more naturally to refer to the person named in the obligation assigned, and thus not intended to require that the writing by which the obligation is assigned must name them. But the answer may be rested on broader grounds. General assignments of choses in action, even when no specific mention of the particular chose in action is made, have been recognized as valid since early territorial days, and our books are full of cases where the assignee of an obligation so assigned has been permitted to enforce it against the obligor. Legal rules and principles long acquiesced in and acted upon cannot be suddenly changed without working hardship and loss upon the business world, and such a course is not to be thought of unless some overwhelming necessity exists therefor. No such necessity exists in this instance. The statute is, at best, of doubtful applicability and of doubtful interpretation, and we think should be given an interpretation in accordance with established usage.

In this connection, it is further insisted that the assignment is of itself insufficient to pass choses in action. The concluding clause of the assignment we have quoted, is sweeping in its terms, and clearly shows an intent on the part of the assignor to sell and transfer to the assignee named in the instrument all

of its personal property of every kind whatsoever. While the cases may not be uniform on the question, it is generally held, and the better reason is, that choses in action will pass under a general description of this sort. 5 C. J. 946.

The third reason is that the action is barred by the statute of limitations. From an examination of the dates heretofore given, it will be noticed that the present action was begun more than three years, but less than six years, after the time the appellant's assignor paid to the bank the obligation of the Kugarok Mining & Ditch Company for which it had become sponsor, and the contention is that the three-year and not the six-year statute of limitations is controlling. But we think the question is controlled by our decisions in the cases of *Caldwell v. Hurley*, 41 Wash. 296, 83 Pac. 318, and *Lindblom v. Johnston*, 92 Wash. 171, 158 Pac. 972. These were actions for contribution by one surety, who had been compelled to answer for the default of the common principal, against another who was equally liable to answer for the default. In the one case the parties were sureties on the note of a third person, and in the other they were sureties upon the bond of a postmaster. In each of them the action was instituted more than three years, but less than six years, after the cause of action accrued, and in each of them the defense of the statute of limitations was imposed. In each case it was held that the statute was inapplicable, since the action was based upon an implied agreement arising out of a written instrument, and could be maintained at any time within six years after the cause of action accrued.

Counsel seek to distinguish these cases from the case at bar, but, without following the arguments, we think the governing principle is the same. If an action for

contribution by one indorser of a note against another indorser of the same note, or an action for contribution by one surety on the bond of a postmaster against another surety thereon, is an action upon an implied contract arising out of a written instrument, within the meaning of our statute, clearly so is an action for contribution by one guarantor of the indebtedness of a third person against his co-guarantor thereon, even though the guaranty in form be separate from the writing evidencing the debt. It is unnecessary to review the cases from other jurisdictions apparently maintaining a contrary view. In the cases cited, we pointed out the distinctions in the statutes which give rise to the differences in the holdings.

The next reason urged is that "the guaranty running to the Scandinavian American Bank is not transferable." To this it is a sufficient answer to say there was no transfer by any one of the written contract of guaranty. The facts are that, in response thereto, one of the guarantors paid the obligation and sought to assign the right of contribution arising thereby to another, and the real question is whether this right of contribution is assignable. We have no doubt that it is, and we so held in the case of *Lindblom v. Johnston, supra.* The principal case cited by the respondent in support of this branch of its contention, namely, *Crane Co. v. Specht,* 39 Neb. 123, 57 N. W. 1015, 42 Am. St. 562, does not, as we view it, touch the question here involved. There the defendant, in consideration that the Crane Brothers Manufacturing Company, a corporation, would sell certain materials to one Litchenberger, guaranteed payment of the purchase price of the materials. After selling certain materials to the person named, the corporation changed its name to Crane Company and thereafter sold to the same per-

son additional materials. The materials were not paid for, and the corporation, under its changed name, brought an action on the guarantee. It was held that, because of this change of name, there could be no recovery either for the materials sold prior or subsequent to the change of name; this on the principle that it was an action by one party on a guarantee given to another. The principle the court thought controlling is in itself undoubtedly sound, although, were the question necessary to be determined, we might seriously doubt its applicability to the facts presented. But, be this as it may, clearly the case does not determine that a claim for contribution is not assignable.

But perhaps the respondent means that the obligation of Metson on the guarantee was so far personal that he could not arrange with another to take up the obligation and confer on that other the right to exact from the other sureties their proportional share of the obligation when paid. If this be the point, we cannot think it tenable. The doctrine of contribution is a doctrine of equity. It is not based on contract, but is based on the principle that equality is equity, and manifestly the duty of a surety to respond when a common obligation is paid by a third person at the procurement of his co-surety is just as potent as it would be were the obligation paid by the co-surety personally. Here the co-surety surrendered his property in consideration that the person to whom it was surrendered would take up this obligation, and unless this was done under an understanding or agreement that all the sureties were to be released, the liability of the others to contribute continues. The record before us shows no such understanding or agreement.

The fifth reason assigned is that, when the appellant's assignor paid this obligation, it was but paying

its own debt and, because thereof, had no cause of action against any one, and hence no cause of action which it could assign to the appellant. In support of this position, counsel say:

"It is claimed in this case that the Pioneer Mining Company, assignor of the plaintiff, by virtue of a contract between it and W. H. Metson, one of the joint guarantors, became substituted for Metson as to all rights and liabilities in connection with the affairs of the Kugarok Mining & Ditch Company. Of course, this is absolutely silly. It takes at least three parties to create a contract of novation. In fact, it takes the consent of all interested in the subject-matter. No such novation as here claimed could possibly be created without the express consent and concurrence of the defendant, Davidson, and J. E. Chilberg, the other joint guarantors, and The Kugarok Mining & Ditch Company. This in reference to Kugarok affairs. A glance at the matters involved in this contract will show that it would have needed the concurrence of some ten or fifteen other persons. The agreement 'as is' that they refer to may be good as between the Pioneer Mining Company and Metson, but they cannot foist off onto the defendant any person he has not agreed to accept, nor can they vary his previous rights and liabilities, nor create new ones. This contract does not affect Davidson at all. The only bearing it has on this case is to show why the Pioneer Mining Company paid the amount of this note to the bank. And it shows very clearly. It paid it because for a valuable consideration (and that a very, very valuable one) it promised Metson so to do. It was paying its own debt and not someone else's."

This argument does not seem to us to be conclusive. The doctrine of subrogation as between the appellant and the respondent is not involved. The guarantor, Metson, contracted with the Pioneer Mining Company to satisfy an obligation on which he was jointly liable with the respondent and another. To make this con-

tract valid required no consent on the part of the other obligors, or on the part of their common creditor. As between Metson and the Pioneer Mining Company, the mining company was perhaps but paying its own debt when it paid Metson's proportionate share of the obligation, but when it paid the shares of the other obligors it did not pay either its own debt or Metson's debt, save as one person always pays his debt when he pays an entire obligation on which another is, or others are, jointly liable with him. While the payment satisfied the debt as between the guarantors and the principal creditor, it gave rise to a new right, namely, the equitable right to exact contribution from the other obligors. It is on this latter right that the action is founded, and so far from being satisfied by the payment of the principal obligation, it was created by such payment.

The sixth reason is that the question involved is *res judicata*. In his answer to the complaint, the respondent, as an affirmative defense, set out the proceedings in an action in which the respondent, J. W. Davidson, was plaintiff and J. E. Chilberg was defendant, and alleged that the subject-matter of the present action was fully adjudicated therein; further alleging:

"That the plaintiff (the present appellant) has no title or interest in or to said note and guaranty described in the complaint, but is a mere tool and dummy of the said Chilberg, and bringing this suit fraudulently for the purpose of tying up and preventing the defendant from collecting his said judgment against Chilberg by issuing and serving a writ of garnishment in this suit, and that said Chilberg is the real and beneficial plaintiff in this action; that the subject-matter of this suit is a part of the subject-matter of said suit of Davidson v. Chilberg, and the real parties in interest in both suits are the same."

A demurrer was interposed and sustained to this branch of the answer, and the appellant asks us

"to disregard the erroneous decision of the lower court sustaining the demurrer, take as established the facts stated in said opinion (the opinion of the court rendered in the case of Davidson v. Chilberg) and to hold that this is another good reason to sustain the decision of the court below in this case."

But this is asking us to exceed our powers. The question whether the court erroneously sustained the demurrer is not before us. This is an appeal by a plaintiff from a judgment of dismissal entered against it because it was deemed that its evidence was insufficient to make a *prima facie* case in its favor. In such a case, errors of the court committed against the other side are not reviewable. Moreover, we have quoted enough from the answer to show that it contains traversable allegations extrinsic of the judgment record, the truth of which could not be assumed even were we to hold that a defense to the plaintiff's cause of action was stated therein.

The final reason assigned requires no special consideration. It is sufficient to say that it suggests inquiries which the court cannot enter upon on this appeal.

The judgment appealed from is reversed, and the cause remanded for further proceedings.

Mount, Tolman, and Bridges, JJ., concur.

Holcomb, C. J. (dissenting)—I dissent; particularly upon the fifth contention of respondent as stated in the majority opinion.