[No. 27564. Department Two. September 8, 1939.]

MARION DITTMAR, *Respondent,* v. FRYE & COMPANY, *Appellant.*[1]

*Eggerman & Rosling, Walser S. Greathouse,* and *Joseph J. Lanza,* for appellant.

*Todd, Holman & Sprague, William M. Allen,* and *Lowell P. Mickelwait,* for respondent.

MILLARD, J.—In action by Seattle-First National Bank, as executor of the estate of Augusta Frye, deceased, against Charles H. Frye, to recover on promissory note in the principal amount of forty thousand dollars, judgment was entered in favor of plaintiff

[1] Reported in 93 P. (2d) 717.

December 17, 1938. On the same date, judgment was entered in favor of the plaintiff in action by Seattle-First National Bank, as administrator *de bonis non* with will annexed of the estate of Frank F. Frye, deceased, against Charles H. Frye, to recover on promissory note in the principal amount of sixty thousand dollars.

On April 21, 1938, while the two actions above-described were pending against Charles H. Frye, a writ of garnishment was issued to and served upon the garnishee defendant Frye & Company in each of the two causes. By answer of its treasurer in each cause May 9, 1938, the garnishee defendant admitted that it "was at the time of service of said writ of garnishment and is now and at all times since said service has been indebted to Charles H. Frye in the sum of $126,841.05," less an offset of $3,169.85 indebtedness of Charles H. Frye to Frye & Company. Plaintiff's motion for judgment on the answer of the garnishee defendant on the ground that it appeared therefrom that Frye & Company was indebted to Charles H. Frye in the net amount of $123,671.20, was denied. Over plaintiff's objection, the garnishee defendant by its president (Charles H. Frye) was permitted to amend its answers to allege that the indebtedness of Frye & Company to Charles H. Frye was not matured, thereby presenting an issue of fact on question of maturity of the obligation.

The proceedings on the two writs were consolidated, and the trial of the causes as one action resulted in findings of fact summarized as follows:

That, in January, 1934, Frye & Company was indebted in large amounts to various banks, and that Charles H. Frye was endorser on the notes evidencing such indebtedness. On January 19, 1934, Charles H. Frye mortgaged certain timber lands in Lincoln county,

Oregon, which were his separate property, to the creditor banks as security for the indebtedness of Frye & Company. On January 12, 1938, the timber lands were sold. The net proceeds of $191,588.32 of that sale were distributed to the three remaining creditor banks as follows: National Bank of Commerce of Seattle, $63,894.36; Seattle-First National Bank, $64,747.27; Bank of California, $62,946.69.

On January 12, 1938, the National Bank of Commerce and the Bank of California applied the amounts aggregating $126,841.05, distributed to them as above stated, upon the indebtedness owed to them by Frye & Company upon the note representing which indebtedness Charles H. Frye was endorser. On the same date, Frye & Company entered on its books a credit of $126,841.05 in favor of Charles H. Frye, representing the amounts applied by the two banks upon the indebtedness mentioned. By reason of the application of the proceeds of the sale upon the indebtedness of Frye & Company to the two banks mentioned, there arose on January 12, 1938, in favor of Charles H. Frye, an indebtedness of $126,841.05 from Frye & Company, which indebtedness was then due, payable, and matured, as against which Frye & Company is entitled to a set-off of $3,169.85 on account of indebtedness of Charles H. Frye to it in that sum.

In consonance with the foregoing findings, judgment was entered in favor of the plaintiff. Frye & Company appealed. Since the appeal, the judgment in the consolidated causes has been assigned to Marion Dittmar, who, pursuant to motion and stipulation of the parties interested, has been substituted as respondent in place of the Seattle-First National Bank.

Unless the evidence preponderates against the finding that the indebtedness owing by Frye & Company to Charles H. Frye was a matured obligation at the time

the writs of garnishment were served, the judgment must be affirmed. The only issue presented is whether the indebtedness of appellant to Charles H. Frye was a matured or a deferred obligation at the time the writs of garnishment were served upon it.

In December, 1932, Frye & Company and Charles H. Frye were heavily indebted to a number of banks. A bankers' committee representing the Seattle and Portland banks to which Frye & Company were indebted decided to accept demand notes in lieu of the then existing notes of Frye & Company, and one of the conditions or terms for liquidation of the indebtedness on which appellant relies to establish its contention that, at the time of the service of the writs of garnishment, its indebtedness to Charles H. Frye was not a matured obligation, is as follows:

"That Frye & Company will not permit its president, or any other officer or employee, to draw funds or obtain funds on their personal account in excess of their stipulated monthly wage or salary."

In January, 1934, thirteen months subsequent to the agreement of December, 1932, Frye & Company was still indebted in large amounts to a number of banks. Charles H. Frye was secondarily liable as endorser on the notes evidencing that indebtedness. The banks insisted upon further security for the indebtedness. Seattle-First National Bank was selected to act as trustee for itself and the other creditor banks under the mortgages given as additional security. Pursuant to that arrangement, Charles H. Frye executed, January 19, 1934, an agreement under which he pledged certain corporate securities and other property to the trustee bank.

At that time, Charles H. Frye mortgaged to the Seattle-First National Bank, Lincoln county, Oregon, timber lands owned by him as his separate property.

That mortgage recited that it was one of a number of mortgages executed by Charles H. Frye in consideration of an extension of time of payment of the indebtedness due the banks, and that the trustee was authorized to apply the proceeds received from sale of the property on the indebtedness listed.

In November, 1935, in order that the sale of the property might be facilitated, Mr. Frye conveyed the timber lands to the Bank of California, as trustee, under an arrangement with the other banks. Under that agreement, it was provided that the net proceeds of the sale of the timber lands would be applied *pro rata* upon the respective obligations of the creditor banks. On January 12, 1938, the bank sold the property. The net proceeds of the sale amounted to $191,588.32, which were distributed to the three remaining creditor banks on a *pro rata* basis, as recited in the early part of this opinion. Two of the banks applied the amounts distributed them upon the indebtedness owed them by Frye & Company, the aggregate of the amounts so applied being $126,841.05.

The bookkeeper of Frye & Company, under instructions from its treasurer, made an entry of credit to Charles H. Frye of $126,841.05, representing the amount owed Mr. Frye by reason of the application of the sale proceeds by two of the creditor banks. By that entry, there was established an open account in favor of Mr. Frye. In the accounts of Frye & Company, an entry was also made reducing the bank indebtedness by the same amount that was credited to Charles H. Frye. That was the state of the account when the writs of garnishment were served on appellant April 21, 1938.

Patently, an indebtedness from Frye & Company to Charles H. Frye, who was secondarily liable as

endorser for the indebtedness of Frye & Company to the banks, arose immediately upon the application of the proceeds of the sale of his Oregon timber lands on the indebtedness of Frye & Company to the creditor banks. 9 Am. Jur. 208, § 455; *Holland v. Tjosevig*, 109 Wash. 142, 186 Pac. 317. The implied obligation of the primary debtor (appellant) to reimburse the endorser (Charles H. Frye) accrued and became due and payable when the payment ·was made, regardless of whether it was a partial payment or a complete discharge of the debt. *Seattle v. Walker*, 87 Wash. 609, 152 Pac. 330; 37 C. J. 860.

"An implied contract to indemnify one who pays the debt of another arises at the time the suretyship is made. . . .

"But a cause of action against the principal does not arise until the promissor makes payment.

"It is not necessary to pay the entire debt; an indemnity may be enforced upon part payment to the extent of the amount paid, and if the debt is paid by installments, action may be brought for each installment as it is paid." Stearns Law of Suretyship (4th ed.), § 280.

 There is nothing in the agreement of December, 1932, upon which appellant relies, which postponed or extended the maturity of the obligation of Frye & Company to Charles H. Frye; that obligation was due and payable on and after January 12, 1938. The provision of the agreement of December, 1932, relates to *advances* and was not intended to prevent Frye & Company from meeting its corporate obligations accruing subsequent to the date of that agreement. The provision was intended to prevent overdrafts on the part of the officers in anticipation of future salaries. The officers were not permitted, under the agreement of December, 1932, to obtain funds on their personal ac-

count in excess of their monthly wage or salary. Clearly, that provision is inapplicable to the indebtedness arising out of the sale of the property pledged more than one year later by Charles H. Frye under specific agreements.

The agreement of December, 1932, containing the provision upon which appellant relies, did not contemplate the deposit of any collateral, and none was deposited under it. That arrangement between the banks and appellant was unnecessary after the collateral was given in 1934; and it is clear that thereafter the parties treated the letter of December, 1932, as of no effect. Mr. Frye was permitted to overdraw on his current account amounts in excess of five thousand dollars over and above his salary; at the time the writs were served, the overdraft was $3,169.85, which was increased to $4,561.00 at the time of trial.

The mortgage and sale of the timber lands constituted a transaction to which the agreement of December, 1932, did not apply. The letter of 1932 contains nothing to prevent Frye & Company from paying Charles H. Frye, whose claim arises out of the sale of his timber lands for the account of Frye & Company. There was no agreement postponing the maturity of indebtedness of Frye & Company to Charles H. Frye.

The trial court believed, as do we, that the original answer of the treasurer of appellant, that Frye & Company at the time of the service of the writs was indebted to Charles H. Frye in the amount stated, was true, and that the subsequent testimony of Mr. Frye and appellant's treasurer, concerning an understanding to defer payment, was untrue. The defense of immaturity of the obligation was, we are convinced, an afterthought, born when appellant was confronted with a judgment requiring payment by appellant of the money into court.

The evidence overwhelmingly preponderates in support of the findings; therefore, the judgment should be, and it is, affirmed.

BLAKE, C. J., GERAGHTY, SIMPSON, and ROBINSON, JJ., concur.