**KEL WEATHERSTRIP COMPANY, Inc., a Corporation, Plaintiff,**

v.

**Gordon RANKIN, Gloria Rankin, The First National Bank of Anchorage, and The United States of America, Defendants.**

No. A–9450.

District Court, Alaska
Third Division, Anchorage.
Oct. 5, 1954.

Boyko & Martin, Anchorage, Alaska, for Rankins.

Cuddy, Cuddy & Dunn, Anchorage, Alaska, for First Nat. Bank of Anchorage.

William Plummer, U. S. Atty., James M. Fitzgerald, and Clifford J. Groh, Asst. U. S. Atty., Anchorage, Alaska, for the United States.

FOLTA, District Judge.

This is a suit for the foreclosure of a mechanic's lien under Sec. 26–1–1 et seq., A.C.L.A.1949, for labor and material furnished for the modernization of the defendants Rankins' home, in the sum of $1,397.67, and to recover the sums of $500 allegedly due under the contract pursuant to which such labor and materials were furnished, and $550.70 which the plaintiff paid as an indorser of the note executed by the Rankins to the plaintiff concurrently with the execution of the contract.

It has been stipulated that the mortgage lien of the defendant First National Bank is entitled to priority. The lien of the defendant, United States, for unpaid income taxes of the Rankins for the year 1951, however, remains for adjudication. The Rankins contend that since the plaintiff is only secondarily liable on the note, its payment of $550.70

was as a volunteer and that hence they are not liable to the plaintiff. By way of counterclaims, they allege that the plaintiff defaulted in the performance of the work agreed to be done, to their damage in the sums of $1,000, the estimated cost of completion, $2,100 for loss of rentals as a direct result of the alleged failure to complete the job, and $1,875 for unpaid wages.

On April 27, 1953, the plaintiff and the Rankins entered into a contract for the modernization of the Rankin home in consideration of the payment of $3,000. The contract recites the payment of $500 down and requires a payment of monthly installments of $79.85. The job is laconically described as "furnish labor (and) material to repair sidewall and foundation of structure of present building". For the purpose of obtaining the loan of $2,500, a note was executed by the Rankins. Following default in payment thereof, the plaintiff paid $550.70.

The testimony is in irreconcilable conflict on every point. No useful purpose could be served by attempting to review it.

The Rankins contend that, contrary to its express terms, the contract was for $2,500, the amount of the FHA loan, and that the recital of the payment down of the sum of $500 is false and was made at the behest of the plaintiff to enable them to qualify on paper for the loan. The plaintiff admits that no payment down was made, but contends that it was never intended to relieve the defendants of the payment of the entire sum of $3,000. The "repair" of the "sidewall" was to consist of sheathing the exterior walls, and the "repair" of the foundation was to consist of the erection of basement walls of concrete blocks. It appears that the parties construed this written contract to require the plaintiff to furnish labor and material for the sidewall job and material only for the foundation. When the borrowed funds were exhausted before the job was completed, an oral contract was entered into, the terms of which not only appear to be interwoven with those of the written contract, but

are in sharp conflict. The plaintiff contends that so far as the basement job is concerned, it was to supply material under the written contract for the foundation only, and that all materials and labor for all other jobs in the basement, consisting of laying a concrete floor and restoring the apartment to its previously tenantable condition, were to be furnished under the oral contract; whereas the Rankins assert that, so far as the basement job is concerned, including the foundation, the plaintiff, under the written contract, was to supply all the material required to complete that job, and under the oral contract was to supply all the labor in consideration of the defendant Gordon Rankins' entering its employ as a plumber, and agreeing to the deduction from his wages of 60% to apply on the contract.

I find that under the oral contract the plaintiff was to furnish labor to complete the basement walls, to lay a concrete floor, and furnish materials and labor to restore the basement apartment to its previously tenantable condition, and that the defendant Gordon Rankin was to enter plaintiff's employ as a plumber because it was deemed more advantageous to the parties to have Rankin work as a plumber than as a laborer in his own basement.

■ I find that the plaintiff did not abandon his job until after Rankin had quit; that the promises under the oral contract were mutually dependent; that Gordon Rankin was an employee rather than a plumbing subcontractor; that he worked 367 hours as plumber; that the prevailing rate of pay was $3.86 an hour; and that he has not been paid; that the reasonable value of the labor and material furnished to the plaintiff under the oral contract was $1,897.67, from which there should be deducted $1,416.62 due the defendant Gordon Rankin for his services as a plumber, leaving a balance of $481.05, for which plaintiff is entitled to a lien.

■ The defendant also contends that the plaintiff is not entitled to recover on his counter-claim for $550.70 because,

he asserts, an indorser of a note may not recover from the maker a partial payment. Although the matter is not free from doubt, it would appear that the authorities support the proposition that such a payment may be recovered. Wright v. Butler, 6 Wend., N.Y., 284, 21 Am.Dec. 323; Clark v. Northern Pacific Railway Co., 55 N.D. 454, 214 N.W. 33; Rawlings v. Poindexter, 14 Smedes & M., Miss., 66, 53 Am.Dec. 125; Dittmar v. Frye & Co., 200 Wash. 467, 93 P.2d 717; Whitten v. Kroeger, 183 Okl. 327, 82 P. 2d 668.

I conclude, therefore, that the plaintiff is entitled to reimbursement for the $550.70 paid on the Rankin note and credited thereto by the FHA.

▮▮ The plaintiff urges the inclusion of an order in the judgment holding it harmless on its indorser's obligation on the note. No authority is cited or theory stated upon which such a provision could be based. If the plaintiff has in mind something in the nature of a bill quia timet, the answer is that there is apparently no authority for extending that remedy to the field of negotiable instruments. The Rankins insist that the parties should be held in pari delicto for participating in the fabrication of documentary evidence of the down payment, and the completion of the job. Since, however, the written contract has been fully executed and no evidence was introduced for the purpose of showing that fraud was actually perpetrated on the FHA, there is an insufficient basis for the application of the rule.

### Priority of Liens

The question of priority as between the plaintiff's lien and that of the defendant United States arises under the cross-claim of the United States for income taxes. On July 8, 1953, the plaintiff filed its claim of lien under Sec. 26–1–1 et seq., A.C.L.A.1949. In conformity with the provisions of 26 U.S.C.A. § 3670, the United States filed its claim of lien on June 15, 1953. Sec. 3671, Title 26 U.S.C.A., provides that such lien shall arise at the time the assessment list is received by the Collector of Internal Revenue, and Sec. 3672 provides that the lien is not valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice has been filed by the Collector.

Since the foregoing federal statutes and the insolvency statute, R.S. 3466, 31 U.S.C.A. § 191, have undergone a strikingly parallel development, culminating in United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, it would seem that some discussion of the insolvency statute, in the light of the decisions construing it, may be profitable here. An examination of the cases reveals an increasing tendency to favor federal liens. As was pointed out in Bank of Wrangell v. Alaska Asiatic Lumber Mills, D.C., 84 F.Supp. 1, although the Supreme Court has never squarely held that an antecedent lien will defeat priority under Sec. 3466, state and local federal court decisions have given effect to the implications of the repeated failure of the Supreme Court to so hold. Cf. United States v. Guaranty Trust Co., 8 Cir., 33 F.2d 533, affirmed on other grounds 280 U.S. 478, 50 S.Ct. 212, 74 L.Ed. 556.

However in 1929 a new doctrine was interjected into the settled interpretation of Sec. 3466 by Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621, holding that the Federal Government was entitled to priority over a county tax lien which was not specific and not completed by distraint. This doctrine subordinates the inchoate general lien, although prior in time, to the federal tax lien. This distinction between a choate and inchoate lien was given effect in People of the State of New York v. MacLay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, to give priority to a federal tax lien over a state tax lien which had not resulted in a change of title or possession; as well as in United States v. State of Texas, 314 U.S. 480, 62 S.Ct. 350, 354, 86 L.Ed. 356, where the Court relied on Sec. 3466 to give the Federal Government priority over a state lien for gasoline taxes. In the case last

cited, the Court characterized the lien of the state as "nothing more than an inchoate general lien" and added "certainly it did not of its own force divest the taxpayer of either title or possession."

 It is abundantly clear, therefore, that one of the essentials is that, as against the United States, the lien must be specific. What is a specific lien is of course a federal question, United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 356, 65 S.Ct. 304, 89 L.Ed. 294. In People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 346, 91 L.Ed. 348, in denying priority to a recorded state lien, the Court said:

> "It is true that the filing of notice of lien determined the amount of the lien, though the state may have computed wrongly the amount of taxes owed it. * * * But it is not enough that the amount of the lien be known. The lien must attach to specific property of the debtor."

Recently the Court held that a lien is not specific until the lienor reduces it to possession, United States v. Gilbert Associates, 345 U.S. 361, at pages 365–366, 73 S.Ct. 701, at pages 704, 97 L.Ed. 1071, saying:

> "As is usual in cases like this, the Town asserts that its lien is a perfected and specific lien which is impliedly excepted from this statute (Sec. 3466). * * *
>
> "In claims of this type 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. * * * Until such possession, it remains a general lien."

Thus it is noteworthy that the judicial history of Sec. 3466 has been one of continued avoidance of the question whether a perfected specific lien is superior to a claim under that section, by the process of finding, in case after case, that the competing lien was not perfected and specific. This judicial reluctance is important in the instant case because in cases in which priority is asserted, the courts have increasingly drawn upon decisions construing Sec. 3466 as authority in the determination of the question as to when a lien is sufficiently choate and specific to be entitled to priority over federal tax liens. In United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, it was held that the Government's tax lien, although not filed in conformity with the local statute, was enforcible against a bona fide purchaser of the property. By subsequent amendments to 26 U.S.C.A. § 3672, protection against the secret lien of the Federal Government was given to mortgagees, pledgees, purchasers, and judgment creditors, who acquire their interests before the Government records its tax lien. Later this protection was extended to mortgagees, pledgees, and purchasers of securities without actual notice. Until recently the courts have not distinguished choate from inchoate liens under Sec. 3670 and have awarded priority to antecedent liens. Prof. Kennedy, Federal Priorities, 63 Yale Law Journal 905 (1954) cites 30 cases in State and lower Federal Courts where the tax lien has been denied supremacy over antecedent rival liens without any inquiry into inchoateness. Notwithstanding this seemingly settled interpretation, the Supreme Court, in a 1950 decision, elected to apply the test developed under Sec. 3466 and held that a federal tax lien, recorded subsequently to the date of an attachment lien but prior to judgment, was entitled to priority, United States v. Security Trust & Savings Bank, supra. Although in the case last cited, local law declared that the attachment was to be a lien upon all real property attached for a period of three years, unless sooner discharged, the Court characterized the lien as contingent and inchoate, saying, 340 U.S. at page 50, 71 S.Ct. at page 113:

> "Nor can the doctrine of relation back—which by process of judicial

reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation."

The apparent harshness of this decision has led some courts to construe their statutes so as to place the lienholder in one of the protected categories of Sec. 3672, Hawkins v. Savage, D.C., 110 F. Supp. 615. But the language of Sec. 26-1-1 et seq. A.C.L.A.1949, is not susceptible of such construction. However, United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, involving a mortgage foreclosure and sale, indicates that although the doctrine of inchoate general lien will be applied in tax lien cases, the standard of perfection is not quite so unattainable as it has proven in Sec. 3466 cases. In that case, the City and the Federal Government asserted claims against the proceeds of the sale. The question presented was whether priority should be given to the federal tax lien or to the state's property tax and water-rent liens. The liens for the real estate taxes attached as of the assessment date of the prior year and the water-rent liens arose upon failure to pay. Some of the liens had, under local statutory provisions, attached prior to the origin of the government's tax lien. The state court, deeming the state's liens specific and protected, awarded priority to the City. Upon appeal by the United States, the Supreme Court, while recognizing the application of Sec. 3466 cases and inchoate general lien doctrine to tax lien cases, said of those cases, 347 U.S. at page 86, 74 S.Ct. at page 370:

"We do not think they are inconsistent with our decision in this case * * *" and,

"In the instant case, certain of the City's tax and water-rent liens apparently attached to the specific property and became choate prior to the attachment of the federal tax liens",

and remanded the case to the State Court for determination of priority in accordance with its opinion—that the first in time prevails.

Turning now to the instant case, I am constrained to hold, upon the authority of the Security Bank and New Britain cases, supra, that plaintiff's mechanic lien was not sufficiently perfected at the time the assessment list was received by the Collector to be entitled to priority. Plaintiff's lien arises under Title 26, A.C. L.A.1949, Sec. 26-1-3, of which declares that the lien created thereunder shall have preference over "all liens, mortgages, or other incumbrances which may have attached to the land * * * subsequent to the time when the building * * * or repair thereof was commenced". Sec. 26-1-5, ibid, requires the filing of a notice of the claim within 90 days after the completion of the contract or the alteration or repair or after labor has ceased. Although the exact time the lien arises is not spelled out, the clear import of the statute is that after the mechanic's claim is filed a lien arises which dates back to the commencement of the work and is to be given preference over any incumbrance or lien attaching after work commences. Under the facts of the instant case, work commenced May 14, the Government's lien arose June 15, and plaintiff filed notice of his claim of lien July 8. It is my opinion that neither under the doctrine of the Security Bank case nor as modified by the New Britain case, can this lien be considered sufficiently choate on June 15 to be entitled to priority over the Government's tax lien. Unquestionably there is much in the case of In re Taylorcraft Aviation Corp., 6 Cir., 168 F.2d 808, that appeals to reason and justice but it should be noted that subsequently to that decision, the Supreme Court, in the Security Bank case, supra, laid down the essentials for the perfection of liens before they may be accorded superiority over a federal tax lien. Those requirements have not been met in this case. This brings us to the question whether the application of the inchoate lien doctrine to tax lien cases by the Supreme Court requires the holding that a me-

chanic's lien, not perfected at the time the tax lien attaches, is inferior to the Goverment lien. This situation was presented in the case of United States v. Eisinger Mill & Lumber Co., Md.1953, 98 A.2d 81, where the Court, in a well reasoned opinion, pointed out what degree of perfection is necessary to rank the federal tax lien and held, following the Security Bank case, that the mechanic's lien was inchoate when the federal lien attached and awarded priority to the tax lien.

I conclude, therefore, that the lien of the United States is entitled to priority over the mechanic's lien of the plaintiff.