FREDERICK G. AGENS et al.

v.

JULIUS KOCH.

[Decided July 9th, 1908.]

1. That two judgments were on record against vendors was a valid objection to their title to land.

2. A dedication of a proposed street across land made by filing a map in 1857 was a cloud upon vendors' title, entitling proposed purchasers to refuse to take title in the absence of a vacation of such street, though the street was never accepted and the land covered by it had been mostly, if not entirely, improved and enclosed.

3. Ordinarily, if time is not of the essence of a contract to convey, it is sufficient if the vendor can give clear title at the date of a decree to compel the purchaser to specifically perform, though the vendor has no clear title when the bill is brought.

4. A contract dated September 22d provided for a conveyance of vacant land on or before October 15th, and that on the passing of title the purchaser might take possession. The purchaser intended to build and early possession was important, if not necessary, to effect the object of the purchase. Vendors knew that the purchaser intended to build, and that he desired immediate unclouded possession.—*Held*, that while the contract itself did not make it so, considering its terms with the other facts stated, time of passing title was of the essence of the contract.

5. Where one party to a contract to convey land notifies the other that he will not perform, a bill to specifically perform the contract must be filed speedily, unless the party receiving the notice be in possession.

6. That one who contracted to buy land rejected vendor's title October 19th, and they did not sue to specifically perform until February 19th, does not show laches barring their right to sue, where the purchaser was absent for some time in the meantime and did not sue to recover the deposit made by him on the purchase price until February 1st, and there were other circumstances which might have reasonably led plaintiff to suppose that the negotiations were not finally closed.

Heard on bill, answer, replication and proofs.

*Mr. Alfred F. Skinner* (*Messrs. Pitney, Hardin & Skinner*, solicitors), for the complainants.

*Mr. Frank E. Bradner (Messrs. Woerner & Woerner,* solicitors), for the defendant.

EMERY, V. C.

This is a bill by the vendors for the specific performance by the purchaser of a written contract for the sale and purchase of land on Broad street, in the city of Newark, and to enjoin a. suit at law brought by the purchaser for the recovery of the deposit money paid on the execution of the contract. The defendant resists the specific performance of the contract on two grounds—*first,* that the complainants have not, as required by the contract, "a perfect record title" to the premises, and *second,* because the time of conveyance was of the essence of the contract, and the complainants not being able to convey a perfect title by the time stipulated, specific performance should not be decreed. The first objection, as to title, was in fact well founded, at the time of filing the bill and the answer, the premises being on the record encumbered by two judgments against the vendors, and also by a dedication of a proposed street across a considerable portion of the frontage of the premises, on Broad street, made by the filing of a map showing such proposed street (called Pyatt street) in the year 1857, by a former owner of the premises. The street was never accepted by the public, and the lands covered by it had been mostly, if not entirely, improved and enclosed, but the proposed street had never been vacated, and in the absence of such vacation by public authority, the right of the municipal authorities to accept the dedication, even after this lapse of time, was a cloud on the title, and the defendant, who proposed to build upon the premises covered by the proposed street, was justified in declining to accept the title as a perfect record title at the time fixed for passing title. These objections to the title, however, have been removed and at the hearing (February, 1908) releases or discharges of the judgments, and also a vacation of the proposed street by the proper municipal authority, were produced, and a perfect record title can now be given. Objection was made at the hearing to the validity of the vacation, but, as I think, without sufficient grounds. If time is not of the essence of the contract, it is suf-

34

ficient ordinarily, if .clear title can be given at the time of the decree. *Oakey* v. *Cook, 41 N. J. Eq. (14 Stew.) 350, 363, 364 (Court of Errors and Appeals, 1886, affirming Vice-Chancellor Bird)*; *Moore* v. *Galupo, 65 N. J. Eq. (20 Dick.) 194 (Vice-Chancellor Grey, 1903)*; *Fry Spec. Perf. (4th ed.) 1366, &c.; Pom. Spec. Perf. § 422.* The material question, therefore, is whether time was of the essence of the contract, and whether by reason of the failure to tender a perfect record· title at the time stipulated, complainants have no right to specific performance. The contract was dated September 22d, 1906, and by it the vendors, for the consideration of $20,000, agreed to convey by deed of warranty free from all encumbrances (the taxes for the year 1906 to be apportioned to the date of settlement), "a good perfect record title to the premises, subject to a mortgage of $7,500, on or before the 15th day of October next ensuing the date hereof." The purchaser on his part agreed

"to pay the said sum of $20,000 as and for the purchase money, as follows: $500 on signing the agreement, $7,500 by taking the property subject to a mortgage for that amount now upon the same, interest to be apportioned to date of settlement, $7,500 by giving a second mortgage for one year, with interest at five per cent., payable semi-annually, the balance to be paid on the delivery of the deed."

It was then further agreed that the purchaser

"may enter into and upon the said land and premises on the 15th day of October next ensuing the date hereof, or upon the day of passing title, and from thence take the rents, issues and profits to his use."

The time and place for the delivery of the deed and mortgage was then fixed for October 15th, 1906, at the office of defendant's attorney. The deposit money, $500, was paid on the execution of the agreement. On October 15th, by written agreement endorsed on the contract, signed by the vendors, and by the purchaser through his attorneys, the time for the performance of the agreement was extended to October 19th, 1906. The contract and this endorsement are the only writings signed by the parties bearing on the matter of fixing the time. The contract itself cannot be said to have made the time of passing title of

the essence of the contract, but the clause expressly providing
for the delivery of possession on October 15th has some weight
as one circumstance showing the intention on this subject. For
this provision as to possession on October 15th, "or upon the
day of passing title," must, in view of the fact that the convey-
ance was to be made "on or before October 15th," be taken to
mean that by the contract itself, and so far as any intention at
all is shown, it was intended by the parties, at the time of its
execution, that possession should be delivered not later than
October 15th, and earlier, if the title was passed. Possession
after the delivery of the deed would be by virtue of the deed
itself, in the absence of any qualification of this right by the
contract, and the provision in the contract for possession "on
passing the title" is, therefore, reasonably to be referred to a
possession to be taken before October 15th. There is nothing in
the contract itself, however, indicating that this delivery of pos-
session on October 15th was of the essence of the contract, and
the essentiality, if it exists, must arise out of the facts proved in
relation to the purpose or object of the purchaser in making the
purchase, and disclosed to the vendors. The property was vacant,
unimproved property, fronting on Broad street, in the vicinity
of the Lackawanna railroad station, and the defendant intended
to build on the premises immediately on the purchase. The
building which he proposed to erect was an automobile garage,
in connection with a skating rink, to occupy the second floor of
the building, and the probable cost was about $30,000. It is not
disputed that the vendors knew before and at the time of the
contract that the defendant proposed to construct a garage upon
the premises. The adaptability of the lot for that purpose was
one of the inducements to the contract discussed between the
parties or their representatives. A young man, Joo, living with
defendant, and in whom defendant was interested, was engaged
in the automobile business, had lately taken an agency for an
automobile manufacturer, and one object of the purchase was to
have a place in which he could without delay start this business.
The vendors themselves had previously had plans made for a
garage to be erected on the premises, and on the day of the exe-
cution of the contract gave these plans to the purchaser. Whether

the vendors knew at the time of the contract that the building to be erected was also to have a skating rink is disputed. The vendors deny that any information of this kind was given, but I am inclined to think, on this disputed point, the weight of evidence is that this was also disclosed, and that the vendors knew that the purchaser was in negotiations with a tenant for the skating rink, and that to this tenant it was necessary that he should have the building by January 1st. Had the title been passed on October 19th, the building, as it was proved at the hearing, could probably have been ready for the skating rink within two months, and for the garage within three months. Immediately after the contract the purchaser employed an architect to prepare plans for the building as a garage and skating rink, but further work on these plans was stopped not later than October 14th, after the purchaser had been notified by his solicitor, on or about October 11th, of the cloud on the title by reason of the proposed street. This solicitor on the 15th called the attention of the vendors to this dedication as a possible objection to the title and requested a week's extension for further investigation on this matter. The vendors declined to grant a longer extension than four days, and this extension was then endorsed on the contract. The defendant's solicitor says that the reason given for refusing a longer delay, given by one of the vendors, was that a higher price had been offered for the property, and they would not keep the matter open longer. This evidence was not contradicted, and, if true, would tend to indicate that in fixing the time in the extension of the contract time was considered essential, not only by the purchaser but by the vendors. The mere fixing of a date by written extension has of itself been sometimes considered as having a bearing on the question whether time was considered of the essence of the contract. *Wiswall* v. *McGown, 2 Barb. 270*. On the 19th the title was definitely rejected on account of the dedicated street. This rejection was made pursuant to instructions received from the defendant by his solicitor on the evening previous, after consultation at defendant's home with the solicitor as to the time which would be required for removing the defect, estimated as

at least a month, and the improbability of securing a loan on any building erected before the defect was removed.

The defendant, shortly after October 1st, was taken ill, and was not able personally to attend at the passing of title, but on being communicated with over the telephone, he declined to grant any further extension of the contract.

On the evidence, a question is fairly raised, whether the defendant's illness and his inability personally to look after the building, may not have had some influence on his determination not to extend the contract, but on the whole evidence relating to the purchase and its circumstances it would not be fair or just to conclude that the defect, or supposed defect, was a mere pretext to get out of the contract, or to refuse to extend the time. The evidence satisfies me that the object of the purchase was the immediate improvement of the premises, by building, and that possession as early as practicable to pass the title, on or soon after October 15th or October 19th, was important if not necessary to carry out the objects of the purchase. It is also clear, I think, that the vendors knew of this object, and knew also, at the time of the contract, of the defendant's desire for this immediate unclouded possession.

The question is whether, under the circumstances, this knowledge on the part of the vendors, at the time of the contract, or of the extension, is sufficient to make time of the essence of the contract.

Under the clear language of the authorities, I think it was. Baron Alderson, in *Hipwell* v. *Knight, 1 Younge & C. 401 (1835),* one of the leading cases on this point, gives this clear statement of the equitable doctrine and its reasons (at *p. 415, &c.*) : "While upon this subject of the essentiality of time, a court of law ascertains only what the parties have expressed in their contract, a court of equity endeavors to ascertain what is in truth the real intention of the parties, and to carry that into effect; in so doing, however, the court must, in the first place, look carefully at what they have expressed, that being in general what they intend, and the burden is thrown on those who assert the contrary. In the ordinary case of purchasing an estate, the fixing of a day for passing the title is merely formal, and the

stipulation means in truth that the purchase .shall be completed within a reasonable time, regard being had to all the circumstances of the case and the nature of the title to be made. But this is a mere corollary from the general proposition, which is, that the real contract and all the stipulations really intended to be complied with literally shall be carried into effect. We must take care, however, that we do not mistake the corollary for the original proposition. If, therefore, the thing sold be of greater or less value, according to the efflux of time, it is manifest that time is of the essence of the contract, and a stipulation as to time must then be literally complied with in equity as well as in law. The cases of sales of stock and of a reversion are instances of this. So, also, if it appear that the object of one party, known to the other, was that the property should be conveyed on or before a given period, as the case of a residence or the like." Mr. Justice Story, in *Taylor* v. *Longworth, 14 Pet. 172 (1840)*, also a case of specific performance, says: "There is no doubt that time may be of the essence of the contract for the sale of property. It may be made so by the express stipulations of the parties, or it may arise by implication from the very nature of the property, or the avowed object of the seller or the purchaser."

In both of these cases it had been contended that under the doctrines established by previous decisions in equity, time could not be, and that it could not in any way be made, essential to the conveyance, and it was therefore pertinent to examine and define the grounds of exception to the general doctrine. The views of these distinguished judges that time may be of the essence of the contract, by reason of the avowed object of one party known to the other, has been followed as settled law in subsequent decisions denying the relief of specific performance. In *Tilley* v. *Thomas, L. R. 3 Ch. App. 61 (1867)*, the object of the purchase, as the vendor knew, was the immediate occupation as a residence by the purchaser, and this possession could not be given. In *Hyde* v. *Warden, L. R. 3 Exch. Div. 72 (1878)*, a farm was required, as the vendor knew, for immediate occupation for stocking purposes, and this could not be given. In *Nokes* v. *Kilmorey, 1 De G. & S. 444 (63 Eng. Rep. 1141)*, the purchase was for the purposes of building, and the time was

extended for the purpose of perfecting title. On the failure to complete the title by the extended time, it was held that the purchaser was entitled to abandon the contract.

I have not been referred to any decisions in our own courts upon the precise point, and have therefore referred to the decisions in other courts somewhat at length, for the purpose of examining the principles which should control the case. The leading text-books repeat the doctrine of these cases. *Fry Spec. Perf. (4th ed.)* §§ *1081, 1086; Pom. Spec. Perf.* § *385.*

It is my conclusion, upon the whole evidence, that in this case the time for passing the title fixed by the provisions of the contract and its extension was of the essence of the contract, by reason of the object of the vendee in making the purchase for the purpose of immediate building thereon for the purposes of trade, which purpose of immediate improvement was known to the vendors at the time of making the contract. In such purchases of urban property for immediate improvement, the purchaser, as he is entitled to do on the faith of the contract, and the reasonable expectation that it will be carried out at the time agreed on, often, if not generally, incurs obligations and secures contracts in reference to the building and occupation of the premises, dependent upon his procuring possession for building at the time specified. The essentiality of time in the performance of contracts made under these circumstances should not be disregarded.

Before the signing of the contract, the defendant had negotiations for renting part of the building proposed to be erected, and upon the execution of the contract at once continued these and secured agreements for renting, with security for the rent conditional on delivery of possession not later than January 1st, and although these agreements may not have assumed such final formal character as to bind the parties legally, there is no reasonable ground for supposing that such binding contracts would not have been made had the title passed on the day agreed on. And these subsequent negotiations of defendant, relying on possession at the time fixed by the contract, and the fact that defendant has been deprived of the benefit of them, by the failure to deliver possession at the time fixed, are matters which can

be fairly taken into account on considering the whole equitie* of the case for specific performance.

In another aspect of the case the matter of time was relied on as a defence, this being the lapse of time which occurred between the time of defendant's rejection of the title on October 19th, 1906, and the filing of complainants' bill on February 19th, 1907, and not until after defendant had commenced suit at law on February 1st for the recovery of the deposit money. On October 20th complainants served written notice that defendant had defaulted on the contract on the 19th, while complainants were then ready and able to perform on their part, and that defendant would be held responsible for complete performance of the contract. At the same time they offered to remove the defect of title on account of the street, if such defect existed. Defendant, on October 22d, replied with a notice to complainants that the latter had defaulted on the contract, by failing to produce a good record title, although defendant was ready to perform and demanded the return of the deposit money, adding that it was understood that time was of the essence of the contract by reason of the facts known to the vendors at the signing of the agreement, that the premises were desired for the erection of a building before January 1st.

The lapse of time, in this aspect, is set up as a defence to the suit, because of laches in seeking the equitable remedy, an altogether different question from the element of time in the contract itself. As to this defence of laches the general rule is that where one party, arbitrarily or otherwise, notifies the other that he will not perform the contract, the bill must be filed speedily unless the party receiving this notice be in possession. In *Ketcham* v. *Owen, 55 N. J. Eq. (10 Dick.) 344, 349, &c. (1897)*, I referred to the cases on this subject, and held that a delay of three years was fatal. The doctrine is that the failure of the party receiving notice of abandonment, to make immediate assertion of his right to enforce the contract, may be considered as such an acquiescence in the notice and an abandonment of equitable rights as to leave the parties to their legal remedies and liabilities. *Walker* v. *Jeffreys, 1 Hare 341, 348 (Vice-Chancellor Wigram, 1842)*. Whether such delay is an acquiescence or

abandonment depends, of course, on the circumstances of each case, and the explanation of the delay. In the present case the delay is, I think, satisfactorily explained. The first definite notice received by complainants of the rejection of the title on account of the street dedication was on October 19th, and up to this time they had no notice of any such defect, nor were they reasonably chargeable with notice, for the land occupied by the proposed street had long been enclosed or built up and no question had ever been raised on previous searches of the title. The defendant himself, on October 19th, was too seriously ill to attend at his attorney's office, and proposed to go to a milder climate as soon as possible. He told his attorney on the night of the 18th, when he instructed him to reject the title, that he might take up the matter again on his return, and on the 19th, at the meeting in the attorney's office, it was stated to the complainants that on defendant's return he would in all probability go on with the matter. Complainants say this statement was made by the defendant's attorney, but the latter says this is a mistake, and that the remark was made by Mr. Joo, the young man for whom defendant proposed to build the garage. Joo, who was anxious that the purchase should be carried through, made this statement, but without any authority whatever either to bind or to speak for defendant. I am inclined to take the attorney's statement as the more reliable on this matter, but so far as relates to the present subject, complainants' delay, it is immaterial, for if the complainants, from the conversation which then took place—Joo being one of the parties interested as procuring the purchase—were reasonably entitled to await defendant's return, such delay cannot be looked at as an acquiescence or abandonment of their rights, especially as they held in hand the deposit money, and the weight of the evidence is that no demand for the return of the deposit was made on the 19th. Defendant did subsequently go away and returned about December 10th, and a few days later one of the complainants called on him with reference to carrying out the purchase, and was then informed that the matter was closed and would not be taken up again. Complainants then said they would have to take counsel as to their rights, and soon after did so. Defendant did not at

once, after this interview, begin suit for the deposit, as being money he was entitled to on his abandonment of the contract, and his short delay in commencing suit might with as much reason be considered as an abandonment of his notification, as complainants' failure to file a bill be taken as acquiescence in defendant's abandonment. The comparatively short delay in the assertion of their rights or claims made by complainants in this case cannot be considered under the circumstances as such acquiescence in the claims of the defendant as to bar any equitable rights they may have to specific performance. Their right to this, as I have said above, depends on the question whether time was in this case originally of the essence of the contract. Being of opinion that it was, I must advise a dismissal of the bill for specific performance.