[No. 20329. Department Two.  April 5, 1927.]

SEATTLE LODGE No. 211, LOYAL ORDER OF MOOSE, *Respondent*, v. GOODWIN REAL ESTATE COMPANY, INCORPORATED, *Appellant.*[1]

[1] MORTGAGES (119) — PERFORMANCE OF PARTICULAR CONDITIONS. Where the owner of property, contemplating a building, gave a mortgage for $60,000 under an agreement by which the mortgagee retained the money and was to pay the same out to the contractor on the terms as contemplated by the building construction contract, interest on the loan to be computed and charged from the time the money was actually paid out, upon completion of the building, the owner, seeking an accounting from the mortgagee, is entitled to a money judgment to the end that it may have the benefit of whatever portion of the $60,000 fund remained in the mortgagee's hands, including interest thereon paid to the mortgagee.

[2] LIMITATION OF ACTIONS (15) — WRITTEN CONTRACTS — IMPLIED LIABILITY. Where the owner of property, contemplating a building, gave a mortgage for $60,000 and entered into a written agreement by which the mortgagee retained the money and was to pay the same out to the contractor as contemplated by the building construction contract, but failed to pay out the entire sum, upon completion of the building, the owner's right of action against the mortgagee for the balance due in its hands is an action upon a contract in writing or a liability, express or implied, arising out of a written instrument, within the six year limitation of § 157, Rem. Comp. Stat., subd. 2.

[3] MORTGAGES (119) — PERFORMANCE OF PARTICULAR CONDITIONS. Where the owner of property, contemplating a building, gave a mortgage for $60,000 under an agreement by which the mortgagee retained the money and was to pay the same out to the contractor as contemplated by the building construction con-

[1]Reported in 255 Pac. 96.

tract, interest on the loan to be computed and charged from the time the money was actually paid out, after completion of the building, the owner, seeking an accounting from the mortgagee, is entitled to a return of the interest paid on the whole principal, to the end that the interest shall be computed from the time the money was actually paid out.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 5, 1926, upon findings in favor of the plaintiff, in an action for an accounting, tried to the court. Affirmed.

*Shank, Belt & Fairbrook,* for appellant.

*Karr & Gregory* and *H. G. Sutton,* for respondent.

PARKER, J.—The plaintiff lodge commenced this action in the superior court for King county seeking an accounting from and a judgment against the defendant real estate company, for such amount as upon a trial should be found owing from it to the plaintiff. The cause, being treated as of equitable cognizance, proceeded to trial in that court sitting without a jury, resulting in findings and judgment awarding to the plaintiff recovery against the defendant in the sum of $6,649.67, from which it has appealed to this court.

In July, 1921, respondent was contemplating the construction of a lodge building upon a lot owned by it in Seattle. The Great Northern Construction Company became interested in the proposed construction, having in view the obtaining of the construction contract. Appellant also became interested in the proposed construction, having in view the placing of a first mortgage loan on the property to the extent of $60,000, understanding that respondent would desire such a loan to aid in financing the construction of the building. Plans and specifications for the building were prepared by respondent's architect. These being examined by appellant's officers, they, thus becoming

advised of the approximate value of the building when it should be completed, proposed to make a first mortgage loan of $60,000 on the property, providing the building would cost at least $83,750. This proposition was made by a letter from appellant to the construction company, dated July 23, 1921, so made evidently because at that time appellant's knowledge of the project was only what it had learned with reference thereto from the construction company; that is, up to that time respondent and appellant were strangers to each other with reference to the proposed construction, all prior talk with reference thereto being only between respondent and the construction company or between appellant and the construction company; the construction company being the one who was actively undertaking to bring about conditions which would enable respondent to proceed with the construction and it, the construction company, having the prospect of obtaining the construction contract.

On July 25, 1921, respondent and the construction company entered into a contract, the plans and specifications being made a part thereof, by which the construction company was to construct the building, furnishing all labor and material therefor, including architect's fees, for a consideration of $90,000. It was therein agreed that payments upon the contract price should be made from time to time, two-thirds from the proceeds of a first mortgage loan of $60,000 to be made by appellant, and one-third from the proceeds of a second mortgage loan to be made by another mortgagee, upon certificates of the architect; the contract providing, relative to the making of such payments, as follows:

"Such payments to be made from monies to be obtained from Goodwin Real Estate Company and Henry Broderick, Inc., by reason of mortgages or

mortgage bonds on said property, to be executed by the owner in favor of said Goodwin Real Estate Company and Henry Broderick, Inc., on terms and conditions as follows: A first mortgage for the sum of Sixty Thousand ($60,000) Dollars to be executed by owner of said property in favor of Goodwin Real Estate Company for a term of five (5) years and to bear interest at the rate of eight per cent (8%) per annum; . . . second mortgage for the sum of Thirty Thousand ($30,000) Dollars to be executed by owner of said property in favor of Henry Broderick, Inc., Trustee, for a term of four and one-half (4½) years and to bear interest at the rate of seven per cent. (7%) per annum, . . . Interest on said loans to be computed and charged from the time the money is actually paid out according to the term of the contract . . . All payments due contractor under this contract shall be made by owner to contractor on the first and fifteenth of each month by orders given by said owner on Goodwin Real Estate Company to pay two-thirds of architect's certificate and orders on Henry Broderick, Inc., Trustee, to pay the balance of one-third of said architect's certificate . . . This contract to be null and void unless mortgages here specified are entered into . . ."

On August 3, 1921, respondent duly executed promissory notes and a mortgage upon the property securing the same in the principal sum of $60,000, in terms as contemplated by the building construction contract entered into between respondent and the construction company above noticed. Appellant then, as we think the evidence shows, being fully advised of all the terms of the construction contract, accepted the notes and mortgage from respondent, retaining in its possession the whole of the $60,000 with the understanding, evidenced orally, that from that fund so in its hands the construction company should be paid from time to time, in accordance with the building construction contract, sums upon order of respondent, and that

from that fund appellant should retain certain commission and expenses incident to the making of the loan; there being no other understanding, oral or written, negativing respondent's right to the immediate receipt of the whole of the $60,000 for which it gave the notes and mortgage, as presumptively would clearly be its right upon the giving of the notes and mortgage, except as affirmatively shown to be otherwise.

Soon after the execution of the notes and mortgage, the construction company commenced the construction of the building and had it substantially completed in December, 1921, but very defectively constructed in some particulars. The trial court found, and we think upon ample evidence, that the defective construction was a damage to the building in the sum of $6,500; that is, that it would cost that much to remedy the defects and make the building as contracted for. In December, 1921, respondent went into the occupancy of the building, having an understanding with the construction company that it would complete the building, as required by the construction contract, and that such occupancy would not be considered as an acceptance of the building as completed according to contract. During the period from September 1, 1921, and January 3, 1922, inclusive, respondent gave to the construction company and the architect in payment towards the construction and the architect's fees, sums aggregating $52,436.40. Appellant received these orders and paid out that aggregate amount thereon. In January, 1922, faulty construction of the foundation of the building became evidenced by the settling of the building. To what extent such fault might develop was then not rendered certain.

On January 6, 1922, respondent, by letter, notified appellant as follows:

"Please do not pay out any funds whatsoever against our mortgage account, unless you receive an order from this office signed by the secretary with the seal of the lodge thereto."

On February 28, 1922, in response to a request therefor, appellant furnished to respondent a statement showing payments made in pursuance of respondent's orders above mentioned, agreeing in all respects with the orders above mentioned, both as to items and aggregate; appellant claiming in that statement, however, that there would be some additional commission and expense charges against the fund incident to the making of the loan, to which it was entitled, but not naming any amount of such charges. No claim was made in that statement, nor otherwise prior thereto, by appellant, that it had paid out upon the construction contract any other sums. On July 3, 1922, the last order to appellant was given by respondent against the fund for $950 architect's fees, which was paid by appellant.

Whether or not appellant has actually paid from the fund upon the construction contract more than these amounts is in dispute. Appellant claims that it did so pay out even more than $60,000, and that it rightfully did so, though not all upon orders of respondent. Respondent claims that whatever sum in excess of the aggregate of its orders upon the fund was paid by appellant was wrongfully paid, and that appellant is now obliged to account for any such sums wrongfully paid as though remaining in its hands.

This action was commenced in August, 1925, after an accounting was demanded by respondent from appellant and it had denied all liability to respondent. In the meantime, the construction company had become insolvent and had gone out of business, rendering it no longer possible to secure from it correction of the

defective construction of the building. Each semi-annual interest installment falling due upon the notes and mortgage, that is, all interest falling due thereon after their execution on August 3, 1921, was paid in full at maturity by respondent to appellant. Thus respondent was paying interest upon monies which it did not receive or from which it had never received the benefit; that is, upon whatever amount was chargeable to appellant as remaining of the $60,000. The items constituting the award in favor of respondent and against appellant by the court's judgment are made up as follows: $4,608.60, chargeable to appellant as being at all times in its hands, which was found to be the balance of the fund after deducting payments made upon the orders of respondent, and commission and other expenses incident to the making of the loan for which appellant was entitled to credit; also $1,869.04, being eight per cent interest upon the sums so remaining in appellant's hands which had been paid to appellant, with other interest upon the whole loan prior to the commencement of this action; this being, in effect, an adjudication that respondent is entitled to the return of such interest so paid upon money which it never had received or had the benefit of; and also $172.03, being interest at the legal rate upon the total amount so found due from appellant to respondent, from the date of the commencement of the action until the date of the judgment, making the total judgment in favor of respondent against appellant in the sum of $6,649.67.

[1] It is contended in behalf of appellant that no cause of action ever arose against appellant entitling respondent to an affirmative money judgment as is here sought. The argument seems to be that, whatever enforcible right respondent has as against appellant

growing out of the loan transaction, is in any event only the right to have credit as against the mortgage debt for whatever sum remains of the $60,000 fund chargeable against appellant as being in its hands. It is to be remembered that this is a $60,000 debt of respondent evidenced by its negotiable, long-time promissory notes capable of being transferred to innocent holders. It is also to be remembered that this debt of respondent is the result of a transaction which manifestly was intended to benefit respondent to the extent that it have the use of the whole of the $60,000 during the term of the loan. Surely, respondent did not give its negotiable notes and encumber its property by this large mortgage, understanding that its only remedy for failure to receive all of the money or the benefit thereof would be to merely have a deduction from the debt as evidenced by the notes and mortgage in such amount which it should happen to fail to receive the benefit of as agreed upon in the making of the notes and mortgage. If respondent has not the right to receive or have the use of the whole loan during the whole term, then a loaner might procure notes of a borrower and a mortgage upon his property securing the same, for a large sum for a long time, retain a substantial portion of the amount so loaned under some understanding had between them for temporary purpose, then not use the retained portion for such purpose and then successfully claim that the borrower's only remedy is to have the debt reduced accordingly. There may be situations wherein such would be the borrower's only remedy, but surely this is not such a case.

No authorities have been brought to our attention which we regard as of material aid in solving this problem. It seems to us but simple justice, in the light of the circumstances of this case, to hold, as we do, that

respondent is entitled to an affirmative money judgment against appellant, to the end that it may recover and have the benefit of whatever portion of the $60,000 fund is chargeable against appellant as remaining in its hands, as the trial court has awarded in this case. Just how much judgment may be ultimately satisfied is of no concern to us here. It may be that, before respondent rightfully seeks satisfaction of this judgment by the ordinary process of execution, appellant will be entitled to some credits against the judgment by reason of unpaid matured interest upon, or principal of, the mortgage debt; but that is foreign to the question of respondent's right to have rendered in this case an affirmative money judgment against appellant at the time of the rendering of the judgment here in question. It is not claimed that there was then any unpaid matured interest upon, or principal of, the mortgage debt.

It is next contended in behalf of appellant that all of the $60,000 fund left in its hands was rightfully paid out by it, though not all paid upon orders from respondent. We are not at all satisfied but that there actually remained in appellant's hands at the time of the rendering of this judgment $4,608.60 of the fund. However, we are fully convinced, as the trial court was, that in any event that sum was not rightfully paid out, if at all, upon the construction contract, both because it was not paid upon orders of respondent and because it was paid, if at all, upon the construction contract when the construction company was not entitled to it or any part of it. This contention involves only questions of fact, as to which the evidence, we think, clearly preponderates in support of the trial court's judgment.

[2] It is next contended in behalf of appellant that the claim of respondent for any balance due it from

appellant was at the time of the commencement of this action barred by our statute of limitations. This contention is rested upon the theory that it is barred by the three-year statute, Rem. Comp. Stat. § 159 [P. C. § 8166], reliance evidently being placed upon subdivision 3 of that section, reading:

"An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument."

Upon the facts of this case, there may be some room for argument as to whether or not such three-year limitation, if applicable to this liability, would bar respondent's right of recovery. However, we think that limitation is not applicable here, but that the six-year limitation is applicable; that is, Rem. Comp. Stat., § 157, subd. 2 [P. C. § 8162], reading as follows:

"An action upon a contract in writing, or liability, express or implied, arising out of a written instrument."

An implied liability here in question, we think, clearly arose out of the written instruments evidencing the loan transaction between appellant and respondent executed on August 3, 1921, less than six years prior to the commencement of this action. The implied liability then so arising from those written instruments, it seems to us, was that appellant would pay over to respondent the full sum of $60,000. The agreement as to the temporary retention of this money by appellant to be paid out on the construction contract did not change the original liability arising out of the written instruments further than to waive the right on the part of respondent to immediately receive the money. That such obligation resting upon appellant was one "arising out of a written instrument"; is, we think, rendered plain by the six-year statute and

our decisions in *Caldwell v. Hurley,* 41 Wash. 296, 83 Pac. 318; *Lindblom v. Johnston,* 92 Wash. 171, 158 Pac. 972; *Oregon-Wash. R. & Nav. Co. v. Seattle Grain Co.,* 106 Wash. 1, 178 Pac. 648; and *Warren v. Rickles,* 129 Wash. 443, 225 Pac. 422. We conclude that respondent's right which it here seeks to enforce was not barred at the time of the commencement of this action.

[3]   Some contention is made in appellant's behalf that the court erred in charging appellant with interest, computed upon the balance of the fund found to be chargeable to appellant as remaining in its hands. The argument seems to be that appellant was, in effect, wrongfully charged with interest upon the balance charged against appellant as remaining in its hands. We think that was not the theory of the court's interest award, but that such award was made in favor of respondent merely as an award of return of interest paid upon the whole $60,000 loan, to the extent that such interest was paid upon a balance of the fund remaining in appellant's hands during all the time up until the commencement of this action. The evidence, we think, plainly shows that it was the intention of all parties that interest should be chargeable only upon the funds actually received by, or rightfully paid out for the benefit of, respondent, computed from the time of such receiving or rightfully paying out; and also shows that it was understood that there should be an adjustment accordingly upon a final accounting. We think respondent was entitled to this interest money; that is, entitled to the return of interest money paid by him, as awarded by the judgment.

We conclude that the judgment should be in all things affirmed. It is so ordered.

MACKINTOSH, C. J., ASKREN, and TOLMAN, JJ., concur.