[No. 21268.   Department Two.   February 11, 1929.]

C: E. MISKEY *et al., Respondents,* v. LEROY MAZEY
*et al., Appellants.*[1]

*W. U. Park* and *Morris & Dubuar,* for appellants.
*Mifflin & Mifflin,* for respondents.

HOLCOMB, J.—Trial was had before the lower court, without a jury, in this cause, on September 29, 1927. A brief narrative statement of facts was proposed and

[1]Reported in 274 Pac. 698.

filed by appellants in the office of the clerk of the trial court on January 6, 1928. No amendments were proposed by respondents to the proposed statement of facts.

Motion made in the brief by respondents to strike the proposed statement of facts and affirm the judgment, upon the grounds that the statement of facts was not filed within thirty days after the time began to run within which an appeal could be taken and not enlarged by stipulation or order, is not well taken and is therefore denied. The authorities cited by respondents apply to the statutes in force prior to the taking effect of Rule VII of this court relating to appellate procedure, 140 Wash. xxxix. (Rem. 1927 Sup., § 308-7.)

While the trial judge duly certified that the statement of facts proposed by appellants contains all the material facts, matters and proceedings occurring in the cause not already a part of the record therein, the statement is very fragmentary and unsatisfactory. Although it purports to contain much of the testimony of the parties and witnesses, the trial court, in its summing up of the case at the end of the trial, alluded to matters and things not contained in the narrative statement. The testimony is largely conflicting, but much of it appears to be uncertain and irresponsive under the issues involved in the case. Be that as it may, we must take the statement of facts as it is, and determine the cause accordingly.

On March 17, 1927, appellant Florence Mazey and G. A. Jamison and wife entered into a contract in writing for the exchange of certain properties. The property of Mrs. Mazey, which she agreed to sell and convey, was described as the

"Lease, lease deposits, furniture and furnishings of the Yonkers Apartments located at Northeast corner

of 18th Ave. and Thomas St. (1722 E. Thomas) in King county, state of Washington.''

The property of the Jamisons was described as

''House and three lots located at 8730 Palatine Ave., Seattle, Wash. Legally described as follows: Lots 7, 8, 9, Blk. 1, Greenwood Park Addition to city of Seattle, in King county, state of Washington, free and clear of all encumbrances, etc.''

The contract further provided that each party should furnish to the other an abstract of title, or title insurance, brought down to date, showing good and marketable title free from all encumbrances, each party should have ten days after the delivery of the abstract, or title insurance, in which to examine the same; and a further period of thirty days after delivery in which to correct any defects if any should appear. It was agreed that each party should convey the respective property contracted to the other by good and sufficient deed, deeds to be delivered and transactions closed within ten days of the date of the contract. It was also agreed that, should either party fail to perform and carry out their part of the agreement, such party should pay all of the brokers' commissions below provided for, the agreement being made for the brokers' benefit.

There was a further clause that the brokers agreed to aid in consummating the exchange.

An additional clause appended to the contract ratified and confirmed the employment of respondents as real estate brokers to procure a purchaser for the property of the Jamisons, for which they agreed to pay the brokers a commission of two hundred fifty dollars. A further appended clause ratified and confirmed the employment of respondents by Mrs. Mazey for which she agreed to pay the brokers a commission of one hundred dollars.

The contract was signed by the property owners contracting for the exchange of properties, but not signed by the brokers.

The contemplated exchange not having been consummated, respondents sued appellants for the commissions to have been paid by both parties, less one hundred twelve dollars and ninety-seven cents received by them by a check from appellant, transferred by Jamison. They computed their commissions as follows: One hundred dollars commission to be paid by appellants, two hundred fifty dollars to be paid by the Jamisons and thirty dollars expended for title insurance, less the one hundred twelve dollars and ninety-seven cents which had been paid by Jamison, leaving a balance sued for of two hundred sixty-seven dollars and three cents.

Respondents alleged in effect in their complaint that the Jamisons performed their part of the exchange contract, but that appellants failed and refused to perform their obligations under the contract. In their answer appellants charged both respondents and the Jamisons with failure to perform their obligations.

Appellants answered separately, but each admitted the ownership, as community property, of the lease, lease deposits, and furniture of the Yonkers Apartments, and admitted the execution of the contract. Each alleged the same affirmative first defense, and the husband set up a second affirmative defense and cross-complaint to recover the one hundred twelve dollars and ninety-seven cents paid Jamison under alleged false representations by respondents' agent. No allegations were made by either as to any defect in, or incumbrance upon, the title. The court, however, admitted evidence of a certain alleged incumbrance, without objection by respondents, and the pleadings must be considered as amended to conform thereto. The

first affirmative defenses pleaded certain matters on which there was a conflict of evidence, and the trial court found against them.

After hearing and examining the evidence, the trial court made six findings of fact, none of which are, or can be, seriously disputed under the contract before us, except possibly Findings V and VI. They are as follows:

"That in reliance upon the terms and conditions of said Exchange Agreement and for the purpose of effecting a consummation thereof, the above named plaintiffs, at the request of defendants, at their own expense, procured and paid for a Policy of Title Insurance upon the title of said Jamisons to the real property described in said contract, the cost of which was $30."

"That notwithstanding the said G. A. Jamison and wife, during all times in said contract referred to, were ready, able and willing to consummate said transaction and so remained for the period of ten days from said date and for a period of time thereafter, the said defendants arbitrarily failed and neglected and refused to procure or pay the price for obtaining from their lessor an Assignment of the Lease on said Yonkers' Apartments, and for a period in excess of ten days after the date of said Agreement were unwilling and refused to make such assignment; and that said defendants have failed and refused to complete said contract and agreement or to make said conveyance as therein provided for, or to pay the commissions earned by plaintiffs and by defendants agreed to be paid, notwithstanding demand therefor; that plaintiffs have received on account of the commissions payable by said G. A. Jamison and wife a sum of One Hundred Twelve and 97/100 Dollars ($112.97); and by reason of the acts of defendants as aforesaid, plaintiffs, in addition to the loss of said $130 commission and expense, have sustained a further damage of $137.03. Plaintiffs and said Jamisons did everything on their parts required to be done or performed."

■ As a general proposition, appellants first argue that the contract in question, as shown by its form, contemplated that respondents should sign the same, and since they never signed, so far as they were concerned, it was an unsigned and unenforcible contract.

Although respondents did not sign the contract, by its terms it was made for their benefit, they accepted it and acted upon it, which made it their contract as effectively as if they had signed it. 13 C. J. 305; *Hunter v. Byron,* 92 Wash. 469, 159 Pac. 703.

■ It is next contended that the furnishing of title insurance "forthwith" to appellants was a condition precedent to the obligation of appellants to perform.

What evidence there is before us, shows that title insurance was ordered, and that it was delivered by Fidelity Abstract Co. to respondents on March 23, 1927, which was within six days of the execution of the exchange contract and possibly as soon as the abstract company could, in the ordinary course of business, examine the title to the property owned by the Jamisons and issue the certificate of title. At any rate it was as nearly "forthwith" as the contract required. It did not mean instantly, but that such title insurance should be procured and delivered as reasonably soon as possible.

Whether this title insurance was ever delivered to appellants for the purpose of examination, is not very clear. They deny that they ever saw it until long after the deal fell through, but, on the other hand, there is evidence by respondents and the Jamisons that it was ordered, paid for by the Jamisons, a policy was issued March 22nd or March 23rd, was delivered by the abstract company to respondents and they had it in their office on March 23rd. Whether it was ever actually

delivered to appellants, is not clear. It is clear that it was ready for them.

However, the furnishing of the title insurance on the Jamison property would be a useless thing in case appellants were never able to procure the consent of their landlord to the assignment of their lease. There is evidence that John Davis & Company, the agent of the landlord, was demanding a bonus of three hundred dollars for the assignment of the lease. The evidence of appellant to the effect that respondents' employee promised to procure the consent of the landlord of appellants to the assignment of the lease, because of his close relations with that company, is disputed, and the trial court evidently believed the evidence of respondent. There is also evidence that, up to the expiration of the ten days provided by the contract for its consummation after the Jamisons had executed their deed and put it in the hands of respondents, appellants were still willing to consummate the exchange, and up to about fourteen days after the date of the contract were still trying to procure the consent of their landlord to the assignment of their lease. They were willing to pay the thirty-five dollars, apparently equal to ten per cent of one month's rent, to secure that assignment. However, they did not secure it and never could transfer their lease. Hence an abstract or title insurance on the part of the other party was wholly useless. This answers another proposition extensively argued by appellants to the effect that such abstract as was furnished was for a different property, although the certificate of title did cover the property located at 8730 Palatine avenue, as shown by the finding.

Another contention of appellants is that the title insurance policy showed on its face that there were encumbrances upon the property. This is based upon an exception clause reading:

"(4) Rights granted to the public in the dedication of the plat to make all necessary slopes for cuts or fills in the reasonable original grading of all streets and avenues shown thereon."

A reference to the plat is also made by a copy thereof read into the record containing substantially the same clause.

Appellants contend that the right thereby reserved to the public was not one merely to lower or raise the grade of the street, but was one to make a physical invasion upon the property in the addition—to pile the dirt of a fill upon the private property, or to remove a portion of the private property in order to make the slopes of a cut.

Authorities are cited to the effect that such a right upon the part of the public, constitutes an encumbrance against the property.

Some of the cases cited are where contracts for, or conveyances comprising, acreage were made, where the records showed dedications of streets or highways which would constitute such encumbrances. Such are the cases of *Agens v. Koch,* 74 N. J. Eq. 528, 70 Atl. 348; *Simpson v. Klipstein,* 89 N. J. Eq. 543, 105 Atl. 218; *Grow v. Taylor,* 23 N. D. 469, 137 N. W. 451.

And where, under contracts for conveyances covenanting against encumbrances upon real estate, there were actual encroachments on the part of neighboring land owners, as in *Place v. Dudley,* 41 App. Div. 540, 58 N. Y. Supp. 671; and *Vogt v. Shumate,* 213 Ky. 503, 281 S. W. 514.

And cases involving contracts for conveyances clear of encumbrances, where there was shown some additional burden or easement imposed upon the real estate, such as a telephone line, which, though a visible construction upon the highway over land to be conveyed, was such an encumbrance as was covenanted

against, whether visible or invisible; *Fossume v. Requa,* 218 N. Y. 339, 113 N. E. 330.

And burdening easements as for rights of way; as in *Snowden v. Derrick,* 14 Cal. App. 309, 111 Pac. 757; and *Key v. Vidovich,* 58 Cal. App. 710, 209 Pac. 375.

None of the cited cases are apt. In this case the parties contracted with reference to platted land. There was a known street already platted and existing, and the property was described as located and numbered on that street. There was no encroachment by any adjoining property owner of a permanent building built partly on the premises. There was no easement for right of way or for an additional burden upon the highway. There was simply a dedication of the street on which the property was situate and the right reserved in connection therewith for the public to make all necessary slopes for cuts and fills in the reasonable grading of the street. Whether that right has already been exercised by the public, is not shown and not material to show. In any event, appellants visited the property, knew its situation and condition and made no objection to this alleged defect until long after the negotiation had fallen through. We conclude, as the trial court did, that

" . . . after the title was presented, after the time was up, she (appellant,—who represented both appellants) was still willing to go through with it and take that title just as it was, even if she had to pay the $35 to the landlord."

After examining the meager record brought to us and all the authorities cited by appellants under their various contentions, we are unable to conclude otherwise than that the judgment of the trial court was right.

Affirmed.

FULLERTON, MAIN, and BEALS, JJ., concur.