[No. 29286. Department One. August 5, 1944.]

Louis R. DeBritz, *Respondents*, v. A. R. Sylvia, *Appellant*, Bernice Bailey Sylvia *et al., Defendants.*[1]

*A. Clemens Grady,* for appellant.

*Henry W. Parrott* and *Bell, McNeil & Bowles,* for respondents.

Beals, J.—May 6, 1939, plaintiffs in this action, Louis R. DeBritz and Ragna DeBritz, his wife, filed in the office of the clerk of the superior court for King county their complaint, naming A. R. Sylvia and Bernice Bailey Sylvia, his wife, and Harold Peterson and Jane Doe Peterson, his wife, as defendants. The action was based on contract, and September 27, 1939, judgment by default was rendered in favor of the plaintiffs and against the defendants upon the

[1]Reported in 150 P. (2d) 978.

first cause of action stated in the complaint in the sum of $550, with interest from September 24, 1937, and against all the defendants upon the second cause of action stated in the complaint in the sum of $2,350.

March 16, 1943, a judgment was entered in an action brought by A. R. Sylvia and Bernice Bailey Sylvia against Louis E. DeBritz and Ragna DeBritz, vacating the judgment hereinabove referred to as to A. R. Sylvia, and allowing him thirty days to answer the complaint above referred to. Thereafter, Mr. Sylvia answered the complaint, denying the material allegations thereof, and, by way of affirmative defense, pleaded the bar of the statute of limitations against both causes of action.

The issues having been completed by denials, the action was tried to the court sitting without a jury, resulting in the entry of findings of fact and conclusions of law in favor of plaintiffs as to the first cause of action pleaded in the complaint, plaintiffs having abandoned their second cause of action as to defendant A. R. Sylvia. From a judgment in favor of plaintiffs and against A. R. Sylvia in the sum of $550 with interest, entered in accordance with the findings, the defendant has appealed.

Error is assigned upon the overruling of appellant's oral demurrer interposed when the action was called for trial; upon the court's refusal to find that the action was barred by the statute of limitations; upon the court's ruling that upon the facts appellant was indebted to respondents; upon the denial of appellant's motion for a new trial; and upon the entry of judgment against him and in favor of respondents.

It appears from respondents' complaint that August 26, 1937, respondent Louis R. DeBritz (who will be hereinafter referred to as though he were the sole respondent) and defendant Harold Peterson leased from one McClellan real and personal property at North Bend, King county, Washington, theretofore used in connection with the operation of a hotel. Approximately a month later, respondent agreed to sell to Peterson the former's interest in the lease for the sum of six hundred dollars, it being agreed that the

respondent was to retain a one-half interest in the operation of the card room maintained in connection with the hotel. At this time Peterson signed and delivered to respondent twelve checks in the sum of fifty dollars each, one to be cashed each month until the sum of six hundred dollars should be paid. The first of these checks was cashed, but the remaining eleven checks have never been paid.

During the month of November, 1937, Peterson and appellant began negotiations for the transfer of the lease to appellant, it being then agreed that appellant would purchase the lease and business for the sum of thirteen hundred dollars. It was agreed that the lease would be transferred to respondent as security for the payment to him of the $550 due respondent from Peterson, and also apparently to secure payment to Peterson of the sum of $750 due him from appellant. Respondent was to retain his half interest in the operation of the card room.

Appellant desiring to have some opportunity to observe the operation of the hotel, respondent executed and delivered to appellant the following option:

"KNOW ALL MEN BY THESE PRESENTS: That for and in consideration of the sum of Ten Dollars ($10.00) in hand paid, the receipt whereof is hereby acknowledged, I do hereby give and grant unto A. R. Sylvia an option to purchase all my right, title, claim and interest in and to a certain lease dated August 26, 1937, and covering those certain premises known as the McClellan Hotel, situated in the town of North Bend, Washington, together with any stock in trade upon said premises at the time of the exercise of said option.

"In the event of the exercise of the option, the buyer will assume any and all indebtedness arising on account of the operation of the business conducted upon said premises. In the event of the exercise of this option the purchaser shall acquire all interest in the leasehold deposit mentioned in the said lease. In the event of the exercise of this option, the purchase price to be paid by the buyer shall be and is the sum of Five Hundred fifty dollars ($550.00). In the event of the exercise of this option, the undersigned, the giver hereof, shall retain rights to the operation of the card room upon said premises as follows:

The undersigned to be entitled to fifty per cent of the profits of the operation of the card room upon said premises, privilege to exist during life of lease expiring Aug. 31st, 1942.

"This option shall be good for a period of thirty (30) days from and after the date hereof, provided that the maker hereof agrees to extend the same for additional Thirty (30) day periods upon the payment to the undersigned of the sum of $1.00 for each extension hereof, and provided further that this option shall not be extended more than (8) eight times. In the event of the exercise of this option, the maker hereof will make any and all necessary assignments required by the State Liquor Board, but will not guarantee the approval thereof by the said board.

"In the event of the exercise of this option and the conditions precedent to the delivery by the undersigned, the holder of this option shall relieve the undersigned from any and all liability and responsibility and guarantees made by the undersigned to the original lessor named in the lease herein mentioned.

"Dated at Seattle, Washington, this 1st day of December, 1937. L. R. DeBritz"

Within thirty days thereafter, appellant, desiring to consummate the purchase of the lease, took possession of the premises, assumed full management of the hotel business, and prior to October 1, 1938, paid to defendant Peterson the sum of $750 due him under the agreement. No portion of the $550 due respondent was ever paid.

The complaint in this action was filed May 6, 1939.

The questions to be here determined are, first, was the right to purchase the property covered by the option exercised by appellant; and second, if he did exercise his right to purchase the property, does the option agreement, under all the circumstances, constitute a contract in writing, within the scope of the statute of limitations?

The evidence clearly shows that appellant contemplated buying the entire leasehold interest, together with the "stock in trade upon the premises," subject to the reservation by respondent of a one-half interest in the operation of the card room. The option, *supra,* clearly sets forth the terms of the sale and the price. After a period of observation and investigation of the business, appellant

entered into full possession of the leased premises and property, and took over complete management of the hotel and incidental enterprises. From that time appellant hired and paid the employees, and did all the buying in connection with the operation of the hotel. He also purchased a new refrigerator, and had the same installed. Upon the termination of the lease, the owner of the premises reimbursed appellant to the extent of one hundred dollars on account of this installation. Respondent left North Bend, visiting the hotel on weekends to supervise the operation of the card room. Appellant paid defendant Peterson his portion of the purchase price of the property.

Clearly, appellant, by his actions, showed his intention to purchase the business, and it necessarily follows that he entered into possession thereof pursuant to the option.

 Appellant vigorously argues that appellant was not bound by the option agreement, as he did not sign it, and contends that his acts did not constitute an exercise of the option. An option does not bind the optionee to do anything. An option is an offer, which, when supported by a consideration, becomes a contract for the sale of the property described, at the acceptance of the optionee. *Richanbach v. Ruby,* 127 Ore. 612, 271 Pac. 600, 61 A. L. R. 1441. Of course, appellant did not sign the option; it was not a contract of purchase. It is also true that the evidence does not show any later written exercise of the option by appellant, nor does the record show any express or definite oral statement of intention to exercise the same, or any declaration that appellant has exercised his right. Appellant, however, took possession of the premises, paid the rent, conducted the business, and paid a large portion of the purchase price.

Acceptance of an offer may be implied from conduct as well as from words.

In James on Option Contracts, § 817, is found the following text:

"To make a contract having mutuality, the law requires that the minds of the parties shall meet in one and the

same intention. When the parties reach this point in their negotiations they have arrived at agreement and a contract is made. The negotiations for the contract take the form of a proposal, or offer, by one party to the other. Acceptance is the act which vitalizes the offer and gives it legal life as a contract. Excepting the Statute of Frauds and, also, the express provisions of the offer, the acceptance, or as applied to options, the election, may be manifested to the proposer, or optionor, by an act of the other party which presents to his mind the present intention of that party to accept the offer or to exercise the option. This act may be neither word nor writing but conduct simply and only."

The cases of *Wood & Brooks Co. v. Hewitt Lbr. Co.*, 89 W. Va. 254, 109 S. E. 242, 19 A. L. R. 467; *Palmer & Co. v. Chaffee*, 129 Wash. 408, 225 Pac. 65; *Miskey v. Mazey*, 150 Wash. 676, 274 Pac. 698, are to the same effect. See, also, Restatement of the Law of Contracts, § 21.

In the case of *Amherst Inv. Co. v. Meacham*, 69 Wash. 284, 124 Pac. 682, this court said:

"It is argued that the contract is not complete, in that it was not signed by the respondents. It was, however, accepted by them, and they assumed to act under it. This made it as obligatory upon them as though they had signed it in the first instance."

In the case of *Hunter v. Byron*, 92 Wash. 469, 159 Pac. 703, this court said:

"The evidence is clear that the contract of May 1, 1914, was not signed by respondent, but it is equally clear that it was delivered to her by C. L. Byron and that it was accepted by her. Having accepted it, her own signature was not essential."

In the recent case of *Voorhees v. Nabob Silver-Lead Co.*, 174 Wash. 5, 24 P. (2d) 114, this court held:

"Where accounts purport to be audited and approved by a board of trustees and certified to be correct, that becomes a written instrument."

Later in the course of the opinion, after citing the two sections of the statute of limitations, hereinafter set forth, we said:

"We have accordingly decided that, under the above statutes, an implied liability arising out of a written in-

strument is included in the same clause with an express liability arising out of a written contract."

The trial court found as follows:

"VI. That the assignment of said lease to the plaintiff Louis R. DeBritz for the purpose above named was evidenced by a writing, a copy of which has been admitted into evidence herein and marked 'Plaintiff's Exhibit No. 4', and that at the same time the defendant Harold Peterson executed that certain written agreement which has been introduced into evidence herein, and which said exhibit so admitted to evidence was likewise executed for the purpose of securing and guaranteeing that the said Peterson would receive the moneys coming to him and that the plaintiffs would receive the moneys coming to them; that at the times as aforesaid the defendant, A. R. Sylvia, desired a further opportunity to exercise the right and privilege of taking over and acquiring the business conducted at North Bend under and by virtue of said lease, and wished an opportunity to observe the business then being conducted and operated upon said premises by the defendant Peterson, and as a result of said request on the part of said A. R. Sylvia, a certain memorandum in writing was negotiated and the terms thereof agreed upon at or about the said 1st day of December, 1937, and as a result thereof a certain memorandum, which memorandum has been introduced into evidence herein and marked 'Plaintiff's Exhibit No. 2', was executed and delivered to said A. R. Sylvia, and that by reason thereof and in pursuance thereof the said defendant A. R. Sylvia did observe the operation of said lease for a short period, and did within thirty days from and after the execution of said memorandum exercise the said option and did enter into the possession of the said premises, and did take possession and charge of said business, and did employ the help in the operation of said business which consisted of a lunch counter, bar, hotel, and kindred activities, and did incur the bills and obligations incident to said operation, in his own name, and did carry on and operate said business as the owner and proprietor thereof up to to-wit: on or about September or October, 1938; that said defendant A. R. Sylvia did likewise for a period of eight or more months pay the monthly rentals on the leased premises to the lessor in said lease."

The foregoing finding is amply supported by the evidence, and the trial court correctly held that by his conduct appellant exercised his right to purchase pursuant to the option, and by his conduct assumed the obligation to pay for the property described in the option, according to its terms.

Upon the question of the statute of limitations, it seems to be agreed between the parties that if the three-year statute applies, the action is barred, while if the facts bring the case within the six-year statute, the action is not barred.

Rem. Rev. Stat., § 159 [P. C. § 8166], enumerates the causes of action which are barred within three years after accrual. Paragraph 3 thereof reads as follows:

"An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument."

Section 157 [P. C. § 8162], the six-year statute, contains the following:

"2. An action upon a contract in writing, or liability express or implied arising out of a written agreement."

Appellant contends that, as he never signed any writing obligating him to pay respondent anything, this action falls within the three-year statute, while respondent contends that appellant's acceptance by conduct of the written option renders the six-year statute applicable.

 This court has several times had occasion to observe that § 157, paragraph 2, *supra,* is very broad in its scope, as it includes liabilities, express or implied, arising out of written agreements.

In the case of *Caldwell v. Hurley,* 41 Wash. 296, 83 Pac. 318, discussing this statute, this court said:

"[Our statute of limitations] differs from the statutes of limitation of most, if not all, the other states. In fact, after a painstaking research, we have found no similar statute. The peculiar feature of our statute is that an *implied liability* arising out of a written instrument is included in the same clause with an *express liability* arising out of a written contract. The legislature evidently thereby intended that a certain class of actions should be included

within the terms of said section which had not in other states been associated or connected with actions on written instruments or actions founded upon written agreements."

In the case cited, it was held that actions for contribution between sureties arise out of writings, even though the co-surety obligations come into being by operation of law. This rule was followed in the cases of *Lindblom v. Johnston,* 92 Wash. 171, 158 Pac. 972, and *Pioneer Mining & Ditch Co. v. Davidson,* 111 Wash. 262, 190 Pac. 242.

In the case of *Oregon-Washington R. & N. Co. v. Seattle Grain Co.,* 106 Wash. 1, 178 Pac. 648, 185 Pac. 583, which was an action brought to recover the difference between freight rates charged and those prescribed by statute, this court held that the action was one arising out of a written instrument, the document consisting of a bill of lading which did not specify the price to be paid for carrying the merchandise. In the course of the opinion, we said:

"Since the bill of lading is a contract, it is, of course, a contract in writing, and any action upon the contract, or any action upon a liability, express or implied, arising out of the contract, is within the statute if commenced within six years from the time the cause of action accrued, unless the circumstances that the contract does not specifically name the sum to be charged for the carriage, but provides that the sum to be paid shall be the statutory rate, changes the nature of the liability from one on contract, or one arising out of contract, to a liability created by law. It seems clear to us that it does not have this effect. A liability created by statute is one in which no element of agreement enters. It is an obligation which the law creates in the absence of an agreement. But the present liability is not of this sort. The law but fixes the rate to be charged when a contract of carriage is made. In other words, the law does not create the liability; it but determines the amount of the liability created by the express contract of the parties. As such, it is not a liability created by statute. It is a liability arising out of the contract which the parties have by their writing expressed."

In the case of *Behneman v. Schoemer,* 141 Wash. 560, 252 Pac. 133, it appeared that the parties had entered into a contract providing for the reorganization and continued

operation of a failing business, the contract to continue in effect until the business should be placed upon a paying basis. It was held that a later action for an accounting between the parties arose out of the written agreement, and was not barred if commenced within six years.

In the case of *Seattle Lodge No. 211 v. Goodwin Real Estate Co.,* 143 Wash. 210, 255 Pac. 96, a very complicated state of facts was presented in connection with the construction of a building. While the case is not directly in point, it is of interest here, as the defendant relied upon a plea of the statute of limitations, contending that it had never promised in writing to pay the sum of money in question, and that any agreement on its part to pay was oral and barred by the three-year statute. Concerning this phase of the case, the court said:

"An implied liability here in question, we think, clearly arose out of the written instruments evidencing the loan transaction between appellant and respondent executed on August 3, 1921, less than six years prior to the commencement of this action. The implied liability then so arising from those written instruments, it seems to us, was that appellant would pay over to respondent the full sum of $60,000. The agreement as to the temporary retention of this money by appellant to be paid out on the construction contract did not change the original liability arising out of the written instruments further than to waive the right on the part of respondent to immediately receive the money. That such obligation resting upon appellant was one 'arising out of a written instrument', is, we think, rendered plain by the six-year statute and our decisions in *Caldwell v. Hurley.* . . ."

The situation here presented is very like questions which have arisen concerning the rights of the grantor and grantee under a deed which was executed only by the grantor and delivered by him. Concerning such a situation, the rule is as stated in 34 Am. Jur., Limitation of Actions, p. 75, § 88:

"It is established that the acceptance of a deed by the grantee named therein makes it a written contract, and the obligations created by the deed are therefore evidenced

by a writing and are not governed by the limitation respecting verbal contracts."

Appellant's right to take possession of the lease and property here in question was exercised by appellant pursuant to the written option above quoted, and was derived from the contract which resulted from his taking possession of the property under the option. This action, then, arises out of the written agreement which, while of itself unilateral in its nature, became binding upon respondent and appellant when the latter elected to exercise his right under the option to take possession of the property covered thereby.

The written instrument is the source and basis of the contract between the parties, which became binding upon each when appellant accepted and acted upon the option.

Appellant cites several authorities, among them the following:

In the case of *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733, an action on the bond of the county treasurer, it was held that, the action against the treasurer being barred by the statute of limitations, the action on the bond was also barred.

In the case of *Pratt v. Pratt,* 121 Wash. 298, 209 Pac. 535, 28 A. L. R. 548, this court held that, when a debt secured by a mortgage is barred by the statute of limitations, the mortgage is also barred.

In the case of *Levold v. Pederson,* 130 Wash. 380, 227 Pac. 510, this court held that two letters which it was contended constituted a contract, in fact contained no agreement at all, since neither party promised to do anything.

In the case of *Aall v. Riverside Irr. Dist.,* 157 Wash. 442, 289 Pac. 22, we held that a reference to the employment of the plaintiff contained in the minutes of the board of directors did not constitute a contract of employment.

In the case of *Edwards v. Surety Finance Co.,* 176 Wash. 534, 30 P. (2d) 225, we held that

"The right to recover usurious or illegal interest accrues, not from the contract under which usury is paid, nor from any implication contained in the contract itself,

but from a duty imposed by law to repay an unjust and unmerited enrichment."

Such an action, arising in assumpsit, was not based upon the written instrument, and was barred within three years.

None of these cases is in point here.

The judgment of the superior court in favor of respondent is affirmed.

SIMPSON, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.